CASE 56.—ACTION BY G. W. GUNTERMAN AGAINST THE
ILLINIOS CENTRAL RAILROAD COMPANY FOR
DAMAGES FOR PERSONAL INJURIES —November
23, 1909.

## Ill. Central Ry. Co. v. Gunterman

Appeal from  Muhlenberg Circuit Court.

W. P. SANDIDGE, ·Circuit Judge.

Judgment for plaintiff, defendant appeals.—Reversed.

1.  Carriers—Passengers—Injuries by Carrier's Agent—Question
    for Jury.—In an action for injuries to a passenger from a
    shot fired at a third person by a carrier's flagman, evidence
    held to warrant submission to the jury.
2.  Carriers—Passengers—Injuries.—It is the duty of a carrier
    to protect its passengers not only on the train, but while
    they are alighting, and until they have a reasonable time to
    leave the platform.
3.  Carriers—Passengers—Protection from Third Persons.—It is
    a carrier's duty to protect passengers from unruly persons.
4.  Carriers—Passengers—Injuries  from  Acts  of  Flagman.—
    Where trainmen were attacked, and the flagman in the per-
    formance of his duty while repelling the attack shot and in-
    jured an innocent passenger, the carrier was liable if the act
    was wrongful.
5.  Carriers—Injury to Passenger—Act of Flagman—Proximate
    Cause.—Where a conductor, hearing a disturbance in a car,
    entered and quieted the passengers causing the trouble, his
    failure to eject such passengers was not the proximate cause
    · of injury to an innocent passenger from a renewal of the
    difficulty after reaching a station.
6.  Trial—Instructions—Applicability to Proof—Injury to Passen-
    ger—Act of Carrier's Agent.—In an action by a passenger
    for an injury from being shot by a flagman, who attempted to
    shoot another who had attacked him, there being no
    question of negligence, an instruction using the word "negli-
    gently," instead of the words "not in the necessary or ap-

parently necessary defense of himself and associates," was erroneous.

7.  Carriers—Injury to Passenger—Shooting by Trainman—Instructions.—In an action by a passenger for injury from being shot by a trainman, who shot at another person, an instruction to find for defendant unless one of defendant's agents while attempting to shoot another person negligently shot plaintiff, should have stated that if defendant's trainman, when he fired the shot, believed and had reasonable ground to believe that it was necessary to fire the same to protect himself or associates from death or harm, and he so fired the shot to protect himself or associates, they should find for defendant.

8.  Carriers—Injury to Passenger—Instructions—Evidence.—In an action for injury to a passenger from being shot during a disturbance between the trainmen and disorderly passengers, where the evidence was conflicting as to whether the shot injuring plaintiff was fired by a trainman or a passenger, the court should have instructed that defendant was not liable if the shot was fired by a passenger.

R. Y. THOMAS for appellant.

TAYLOR & EVANS, TRABUE, DOOLAN & COX, and BLEWETT LEE of counsel.

I am confident that the Court will have no hesitancy whatever in reversing this case and I believe it ought and will say that the instruction should have been given the jury to find for the defendant, appellant herein.  The court should have instructed the jury to find for appellant:

1.  Because the proof in this case shows that the train crew acted courageously and circumspectly under the circumstances in quelling the disturbance on the train created by the disorderly persons.

2.  Because the proof in this case shows that these disorderly persons while on the train did not insult or offer to insult, and did not harm or offer to harm Gunterman or any other passenger on the train or on the platform.

3.  Because all the evidence of appellee shows that this difficulty took place on the platform after the train had stopped and most of the passengers had alighted, and came up suddenly and was brought on by persons on the platform assaulting the porter and flagman.

Ill. Central Ry. Co. v. Gunterman.

## AUTHORITIES CITED.

Kinney v. L. & N. R. R. Co., 99 Ky., 59; 6 Cyc. 542; South Covington & C. St. Ry. Co. v. Beatty, (unreported) 50 S. W., 239; Winnegar's Adm'r v. Central Passenger Ry. Co., 85 Ky., 547; Sullivan v. L. & N. R. R. Co. 115 Ky., 447; Smith v. L. & N. R. R. Co., 95 Ky., 11; Ferguson v. Terry, 1 Ben Monroe, 96; Crabtree v. Dawson, 119 Ky., 148; 1st Joyce on Damages, page 427, section 363; Robertson's Criminal Law and Procedure, Section 542, page 752.

WILLIS & MEREDITH for appellee.

## POINTS AND AUTHORITIES.

1. When the relationship of carrier and passenger is once established it does not cease until the passenger has had a reasonable opportunity to leave the station platform and the premises of the carrier at the termination of his journey, and the question as to whether or not he has had a "reasonable opportunity" to leave its premises is one for the jury. L. & N. R. R. Co. v. Keller, 47 S. W., 1072, (unreported).

2. A carrier of passengers for hire obligates itself to use a high degree of care to transport the passenger safely to his destination, and it will be liable for any breach of this contractual duty to him. 71 Ky. 147; 41 S. W. 580, (unreported); Cyc. Vol. 6, page 592.

3. A carrier of passengers for hire is liable to the passenger for injury done him by the carrier's servants whether the servant is acting within the scope of his employment, or maliciously, or from motives purely his own. Cyc. Vol. 6, page 600; Chicago & Eastern R. R. Co. v. Flexman, (Ill.) 42 American Reports, 33; 85 Ky., 547.

4. The carrier is also responsible for injury to the passenger by a fellow passenger if it fails to use that degree of care required of it to protect the passenger from injury after it knows or by the exercise of the proper care it could know the fellow passenger's dangerous condition, and the impending peril of the passenger. Cyc. Vol. 6, page 602; L. & N. v. McEwin, 51 S. W., 619, (unreported).

5. When a passenger is injured either by the carrier's servants, or a fellow-passenger, it is a question of fact for the jury to say from all of the evidence and surrounding circumstances of the case whether or not in either event the carrier exercised that degree of care required of it to protect the passenger. (Authorities above cited.)

6.  Where a passenger is injured by the carrier's servant an instruction authorizing a recovery, if the jury believed that the servant "negligently" injured the passenger, was proper.

7.  Plaintiff is not required to anticipate and meet on his direct proof the proof that may be offered by the defendant on a matter plead affirmatively by the defendant as a defense, but is only required to meet such proof as is offered by the defendant thereon.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

G. W. Gunterman was a passenger on the accommodation train of the Illinois Central Railroad Company running from Central City westward. The train was much crowded, and Gunterman rode upon the platform of one of the cars, as his destination was a station known as Mercer, about three miles from Central City. The proof for him tends to show these facts: After the train pulled out from Central City, a crash was heard in the smoking car, and there was some disturbance in there. The conductor went forward hurriedly to the car, and soon he and the flagman came out bringing with them a man named Jackson, whom the conductor said he was going to put off; but he then decided not to put him off, but to take him on to Greenville, and allowed him to go back into the car. After Jackson returned to the car, there was still a disturbance in there. When the train reached Mercer, Gunterman got off and was standing on the platform, while the flagman was helping a lady off. At this juncture a man named Laswell, who had gotten off the train, picked up a rock and knocked down the porter, who was by the side of the car, and struck Langley, the flagman. The proof for the plaintiff shows that at this point the conductor and Langley took out their pistols and Langley began shooting; one of the balls from Langley's pistol striking Gunterman in the back of the neck.

The proof of the railroad company is to the effect that, when the conductor went forward into the smoker, he found that Jackson and Laswell had kicked down the door to the water-closet, claiming that someone had locked them in there, although the fact was that they simply had failed to turn the lock the right way. The conductor undertook to quiet them, and, Jackson being unruly, the conductor struck him. He thereupon quieted and took a seat; and the conductor left the car and went back to the ladies' car to take up his fares. After the conductor left, Laswell, who was with Jackson in the water-closet, became boisterous again, and the flagman, who was in the car, undertook to quiet him, and struck him on the head, from which he bled considerably. He then became quiet, and soon the train pulled into Mercer, where Jackson, Laswell, and a man named Hopkins, among others, left the train. As soon as Laswell got on the ground, he began hunting for a rock, with which he knocked down the porter who had his back to him, and then struck Langley, the flagman, and Langley drew his pistol and snapped it. At this juncture Hopkins drew his pistol and fired two shots at Langley, the first of which struck Gunterman in the neck. The conductor was standing on the platform of the car, but had not gotten off the car when the difficulty took place. There was testimony for the plaintiff to the effect that Hopkins had drawn his pistol in the car before he reached Mercer; but there was no proof that any of the railroad men saw this, or that he was in any way connected with the difficulty that had taken place in the car. The proof for the railroad company was to the effect that Hopkins had done nothing until after the difficulty began on the

ground.   On this conflicting testimony the circuit court instructed the jury as follows:

"(1) The court instructs the jury that if they believe from the evidence that the plaintiff was a passenger on the defendant's (railroad company's) train from Central City to Mercer station, and that when the plaintiff was on the station platform at Mercer Station on the occasion of his leaving the cars after he had been carried from Central City to Mercer Station, and before he had had a reasonable opportunity to leave said station platform after getting off the cars, the agents of defendant railway company, or any of them in charge of said passenger train, while attempting to shoot another person, unintentionally but negligently shot and wounded the plaintiff upon his body and person with a pistol, then, and in that event, the jury should find for the plaintiff such compensatory damages, if any, as were thereby caused to the plaintiff, and which were the direct and natural result of the negligence aforesaid, not exceeding $1,999 the amount claimed.

"(2) The jury should find for defendant unless they should believe from the evidence that some one of the defendant's agents in charge of said train while attempting to shoot another person negligently shot and wounded the plaintiff while he was on the station platform, and before he had had a reasonable opportunity to leave the platform after getting off the cars."

"(4) Negligence as used in the instructions means the failure to use ordinary care, and ordinary care is such care as an ordinarily prudent person would usually exercise under similar circumstances in matters involving his own interest.

He refused to give this instruction, which was asked by the defendant: "The court instructs the jury that, although they may believe from the evidence that one of the defendant's agents fired the shot which struck and injured the plaintiff, but should further believe from the evidence that the said agent who fired said shot, if he did so fire it, was being attacked by some other person, and at the time believed or had reasonable grounds to believe that it was necessary for him to fire same to protect himself from death or great bodily harm at the hands of said person, then the law is for the defendant, and they will so find."

The jury found for Gunterman, and fixed his damages at $1,000. The railroad company appeals.

The court did not err in refusing to instruct the jury peremptorily to find for the defendant, for in helping the passengers from the train the flagman was discharging a duty assigned him by the defendant. It was the duty of the defendant to protect its passengers, not only on the train, but while they were alighting from it, and until they had had a reasonable time to leave the platform. It was incumbent upon it to protect its passengers from unruly persons as they alighted from the train no less than while they were on the train. If the flagman was attacked while he was performing the duty assigned him by the defendant, he had a right to stand his ground and meet force with force, and to use as much force as was necessary to protect him or his associates from death or great bodily harm at the hands of their assailants. In doing all this he was acting for the company, and therefore it is responsible for his acts. Gunterman had just alighted from the train, and a reasonable time had not elapsed when the shooting was done.

The court also properly refused to submit to the jury the question whether the conductor in the exercise of ordinary care should have put Jackson and Laswell off the train before they reached Mercer. When the conductor went to Jackson, he quieted down, and it does not appear that he was afterwards disorderly on the train. There was nothing in the conduct of Laswell and Jackson that should have made the conductor anticipate that after they reached Mercer and got upon the ground they would make an attack upon the trainmen. As what happened at Mercer was not to be reasonably anticipated from what had taken place in the presence of the conductor on the train, it cannot be said that his failure to put Laswell and Jackson off before they reached Mercer was the proximate cause of this trouble.

The fact is that the difficulty at Mercer seems to have followed the flagman striking Laswell after the conductor had left the car and without his knowledge; for it is evident that Laswell got the rock and began the assault at Mercer to avenge himself for the blow which the flagman had given him on the train. This occurred just as the train was pulling into Mercer, and the conductor had no opportunity to do anything before the train reached Mercer. He was then taking up the tickets in the ladies' car, and had no knowledge of it until after the difficulty at Mercer. There was no evidence in the case that any one of the trainmen but Langley, the flagman, did any shooting. In instruction No. 1, in lieu of the words "the agents of defendant railroad company or any of them in charge of said passenger train," the court should have used the words, "the defendant's flagman, Langley."

There is no question of negligence in the case.
If Langley drew his pistol and fired it into the crowd,
shooting the plaintiff, the company is responsible
unless he acted in self-defense.   In lieu of the words
in the first instruction "but negligently," the court
should have used the words "and not in the necessary
or apparently necessary defense of himself or his
associates on the train."   In lieu of instruction No.
2, the court should have told the jury that it was the
duty of the defendant's agents in charge of the train
to protect the passengers while they were alighting
from the car, and that, if they were attacked, they
had a right to stand their ground and meet force with
force, and that, though they should believe from the
evidence that Langley fired the shot which struck the
plaintiff, yet, if they further believe from the evi-
dence that when he so fired it he or his associates on
the train were being attacked by some other person
or persons, and he believed, and had reasonable
grounds to believe, that it was then necessary for him
to fire same to protect himself or them from death or
great bodily harm at the hands of such person or
persons, and he so fired the shot to protect himself
or one of his associates from the said danger real or
to him apparent, they should find for the defendant.
Crabtree v. Dawson, 119 Ky. 148, 83 S. W. 557, 26 Ky.
Law Rep. 1046, 67 L. R. A. 565, 115 Am. St. Rep. 243.
By another instruction the jury should have been told
that the defendant was not liable if the shot which
struck the plaintiff was fired by Hopkins.

The other objections urged are as to matters
which will probably not occur on another trial.   In
view of all the evidence, we conclude that there
should be a new trial.

Judgment reversed and cause remanded for further proceedings consistent herewith.