## Schnabel v. Sutton, et al.

(Decided February 16, 1926.)

### Appeal from Henderson Circuit Court.

1. Elections—Requirement for Filing Certificate of Nomination Held Mandatory.—Ky. Stats., section 1456, requiring certificates of nomination to be filed by nominee with clerk, is mandatory, but clerk is not required to make record of filing; fact that he receives certificate being sufficient.

2. Elections—Nominee, Presenting Certificate to Clerk, Held to Comply with Statute.—Where nominee presented certificate of nomination for filing, pursuant to Ky. Stats., section 1456, and clerk declined to accept it, saying ballots could be printed from names in records of election commissioners which were in his posses-

sion, held, nominee had complied with statute, and therefore sections 1464 and 1550-5, relative to vacancies among nominees, did not apply.

3.  Mandamus—Writ Lies to Compel Printing of Name on Ballots but does Not Lie while Defendant is Doing Thing Sought.—Where clerk fails to print name of nominee on ballots, mandamus would compel him to do so, and, as ancillary thereto, require proper filing of certificate of nomination; but mandamus would not lie while clerk was doing thing sought.

4.  Elections—Law Requiring Filing Certificates of Nomination should be Liberally Construed.—While Ky. Stats., section 1456, is mandatory as to time in which nominee may file certificate, it should be liberally construed as to manner of filing, as it would be manifestly unjust to deprive political party of legal nominee by trivial error in filing certificate.

YEAMAN, PENTECOST & YEAMAN for appellant.

HENSON & TAYLOR for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

At the August, 1925, primary election, Alma M. Schnabel was nominated and certified as the Republican candidate for the office of county court clerk of Henderson county. At the same election Griffin Sutton was nominated and certified as the Democratic candidate for that office. Both names appeared on the official ballot at the November election. The returns as canvassed by the canvassing board of that county showed that Miss Schnabel received 4,688 votes and Sutton 5,380, whereupon Miss Schnabel filed this proceeding, contesting Sutton's election on the sole ground that his name was illegally printed on the official ballot as a candidate for the office named; that all the votes cast for him were illegal and void, and that thereby she had received a majority of the legal votes, had been duly elected and was entitled to the office. The circuit court dismissed her contest and she has appealed.

As the evidence corresponds closely to the pleadings it is unnecessary to set out the former in this opinion. The facts are these: It appears that it has been the practice in Henderson county for the election commissioners to issue triplicate certificates of nomination, one of which is detached and delivered to the nominee and the others remain in their record book, which is left in the county clerk's office when the board is not in session. It has also

been the custom and practice of the county clerk to make out the list of candidates for the printer, to be placed upon the official ballot without the successful nominees filing their certificates as required by law, there having been but four such certificates filed properly within the past four years.

On the first of September, 1925, appellee Sutton and Charles Duncan, Democratic candidate for jailer, went to the clerk's office for the purpose of filing their certificates of nomination. Harry Jones, the regular deputy county court clerk, was in charge of the office, and they presented their certificates and requested him to file them, laying the certificates down on the desk counter between them and him. As to what occurred Mr. Jones testifies that he (Jones) said: "I don't see any use of you filing these certificates of nomination; we will have two duplicates of that in this office. Some of them in the office have never been torn out and I don't think it will be necessary for you to file them, and they said, 'Well, what must we do with them?' I says, 'I suppose they gave them to you to keep. We can make the records from the two duplicates that we have in the office. . . . ' One of them said, 'I will put mine in my pocket,' and the other said, 'I will frame mine.' " He further states that he picked up Duncan's certificate and also saw Sutton's certificate lying with the writing up, on the counter within his reach. It appears that he endorsed Duncan's certificate as filed, though he says that he does not remember doing this and must have done it mechanically, as some weeks afterward he learned that he had endorsed it "filed;" both candidates picked up their certificates and left the office.

On the 15th of September, Miss Schnabel presented her certificate for filing and he had a similar conversation with her, but she requested him to keep it as she feared losing it, and he endorsed it "filed" and placed it in a file case labeled for that purpose, although only one other candidate to be voted for at that election made a similar filing.

Mr. Cottingham, the clerk, testifies that he and Mr. Jones made out the list of names of candidates for the printer to place upon the official ballot; he had opposed Mr. Sutton in the primary and knew that Sutton had been nominated and acted on this assumption; he knew nothing as to what transpired between Jones and Sutton. The evidence of Sutton and Duncan corroborates Jones, Sutton adding that Jones told him that it was not custom-

ary for the candidates to file their nomination certificates and it had never been done as long as he was in office, and showed him the record of the commissioners containing old certificates that had never been detached. The ballots were printed and received by the clerk on the 21st of September. Subsequently a question arose as to the rights of the various candidates to have their names placed on the official ballot, and on the 28th of October, the executive committee of each of the parties met and renominated the candidates theretofore nominated in the primary. The action of the Republican committee is not in issue as Miss Schnabel filed her certificate. The Democratic committee adopted a preamble reciting the facts as to the nomination of their candidates and of their attempt to file their certificates and that a question or doubt had arisen as to whether the nominee had filed or attempted to file their certificates within the time and manner prescribed by law and that it appearing that there were vacancies in the nominations of said office on the Democratic ticket to be voted for at the coming November election 1925, and "Now, therefore, in order to set at rest said questions and also for the purpose of filling said vacancies and making legal the nominations to the said various offices for the Democratic party in said county at said time and place, be it further resolved, &c.," all of the candidates being renominated and this being certified to the clerk of the court on the same day. On the following day, October 29, the chairman of the Democratic executive committee, Judge J. W. Henson, still entertaining doubt as to the validity of the former proceedings again named the same candidates to the various offices and certified this nomination to the county clerk.

It is urged by appellant, that Sutton failed to file his certificate of nomination forty-five days before the election and therefore forfeited his nomination; (2) that section 1550, subsection 5, Ky. Statutes, reading: "That when a vacancy occurs by death or otherwise the governing authority of the party may provide for filling such vacancies and making such nominations . . . " is to be read and considered in connection with section 1464, Ky. Statutes, which provides:

"In case of the death, removal or resignation of any candidate after the printing of such ballots, and before such election, it shall be lawful for the

chairman of the state, district or county political organization of which such candidate was a member to make a nomination to fill such vacancy, and to provide the election clerk of each precinct in which such candidate is to be voted for with a number of pasters containing only the name of such candidate, at least equal to the number of ballots provided each precinct. . . . ''

In this regard she insists that it was the intention of the legislature to permit the county committee at any time before the ballots were printed to fill a vacancy arising from any cause as provided by section 1550, *supra,* but that after the ballots are printed the committee is not authorized to act, though in such a case under section 1464, the chairman may fill a vacancy caused by death, withdrawal or resignation and provide pasters, &c., but that he cannot fill a vacancy arising from any other cause, it being further argued that as the committee did not act in this instance until after the ballots were printed, it was without authority to make the nomination and that as the vacancy was not caused by death, removal or resignation, the chairman was not authorized to fill it after the ballots were printed and therefore an attempt to fill the vacancy was void in each instance. On its face this appears to be a refined distinction as well as a strained construction.

But we do not find it necessary to construe those provisions, as it seems to us that the contestee substantially complied with the law relating to filing certificates of nomination. It is the duty of the clerk to have the official ballots printed, and the purpose of filing the certificates of nomination is to furnish him legal evidence of the party nominees. Several months elapse between the primary and the date of printing the ballots for the general election, during which vacancies may occur and appointments be made to fill vacancies. Perhaps for this and other reasons confusion might result and the clerk be unable to determine the legal party nominees, if the canvassing board merely filed the certificates of nomination with him; hence, we have held that section 1456 of the statutes, requiring such certificates to be filed not less than forty-five days before the election, is mandatory. Justice v. Justice, 184 Ky. 130; Daniel v. Blankenship, 177 Ky. 726; Brodie v. Hook, 135 Ky. 87; Holland v. Center, 102 Ky. 119; that this duty devolves upon the

candidate and if he negligently fails to discharge it, the clerk has no right to place his name upon the ballot, and if notwithstanding such failure he does place such name upon the ballot, such action is illegal and the votes thereby received by the candidate are void. Justice v. Justice, *supra*; King v. McMahan, 179 Ky. 536; Parrish v. Powers, 127 Ky. 104; Hulette v. Carter, 194 Ky. 454.

But the clerk is not required to make any record of his filing except the endorsement upon the certificate itself, and we have held that if he receives the certificate from the candidate this is sufficient; and the candidate is not required to see that he endorses the word "filed" upon it, though he might mandamus the clerk to so endorse the certificate and to place his name upon the ballot. See Daniels v. Blankenship, *supra*. Further, it must not be overlooked that duplicate certificates are also evidence of party nominations, and that while perhaps the clerk is not the legal custodian of the records of the election commissioners and is not chargeable with notice of their contents, still if he does take actual possession of the certificates and so informs the candidate and for that reason declines to accept and file a certificate that is duly presented to him within the proper time by the latter, assuring him that he will from the evidence in his possession print his name upon the ballot and actually does so, this should be sufficient. If under such circumstances the clerk fails to print his name upon the ballots he may mandamus him to do so and, as ancillary thereto, require proper filing of the certificate, but a mandamus would hardly lie while the clerk was doing the thing he sought, and which in this case was the proper thing for him to do. Also we should bear in mind that party nominations are matters of general concern, and that the popular will as manifested in such nominations is entitled to consideration. If the candidate has been legally nominated he is the representative of his party, and while the law is mandatory as to the time in which he may file his certificate, it should be liberally construed as to the manner of filing, as it would be manifestly unjust to deprive a party of its legal nominee by a trivial error occurring at the time of filing the certificate. It follows that appellee's name was properly placed upon the ballot and the votes received by him are not vitiated in any respect by the action of the clerk in the premises.

Perceiving no error the judgment is affirmed.