## Lewis v. Mosely.

(Decided May 28, 1926.)

### Appeal from Leslie Circuit Court.

1. Elections—Contestee's Failure to Prove Defense that More Votes for Him than for Contestant were Cast by Writing his Name on Ballots, Even if Name was Illegally Printed Thereon, Eliminated Such Defense.—Contestee's failure to discharge burden of proof, cast on him by reply denying defense that more votes for contestee than for contestant were cast by writing his name on ballots, even if his name was illegally printed thereon as contestant claimed, eliminated such defense.

2. Elections—Filing of Tabulation of Votes with County Court Clerk by Board of Election Commissioners is Not Tantamount to Filing Certificate of Nomination (Ky. Stats., Sections 1456, 1550-5).— Filing of tabulation of votes cast in primary election with county court clerk, under Kentucky Statutes, section 1550-5, by county board of election commissioners, is not tantamount to filing certificate of nomination as required by section 1456, which casts duty on candidate to see that officer, whose duty it is to print ballot for regular election, is duly notified of nomination in statutory manner.

3. Elections—Officer Authorized to Print Ballots Cannot Print Name of Candidate, Whose Certificate of Nomination is Not Filed Within Statutory Time, and, if he does, Votes Cast for Such Candidate are Void (Ky. Stats., Sec. 1456).—Where certificate of nomination is not filed by candidate or another at his instance, with officer authorized to print ballots within time prescribed by Kentucky Statutes, section 1456, such officer cannot print name of such candidate on official ballot for regular election, and, if he does, votes cast for such candidate are void.

4. Courts—Court of Appeal's Conclusions on Motions Made Before Single Members, that Party Committee May Nominate Candidate, Failing to File Certificate of Nomination in Time, are Not Binding as Precedents, but May be Considered (Ky. Stats., Secs. 1456, 1550-5; Civil Code of Practice, Sec. 296).—Court of Appeal's conclusions on motions made before single members under Civil Code of Practice, section 296, as to dissolution or granting of injunctions, that failure of candidate to file certificate of nomination in time required by Kentucky Statutes, section 1456, is tantamount to resigning nomination, and creates vacancy that can

be filled, by party committee under section 1550-5, by nominating such candidate, are not binding as precedents, but may be considered for whatever persuasive effect they may have.

5. Elections—Candidate Not Filing Certificate of Nomination Within Statutory Time Resigns Nomination and Creates Vacancy, which Party Commmittee May Fill by Nominating Him (Ky. Stats., Secs. 1456, 1550-5).—Candidate failing to file certificate of nomination within time required by Kentucky Statutes, section 1456, resigns nomination, and thereby creates vacancy that may be filled by party committee under section 1550-5, by nominating such candidate.

6. Elections—Statute Vesting Exclusive Authority to Fill Vacancies in List of Party Nominees After Ballots have been Printed in Chairman of Party Committee Held Not Impliedly Repealed by Statute Authorizing Committee to Fill Vacancies (Ky. Stats., Secs. 1464, 1550-5).—Kentucky Statutes, section 1464, vesting authority to fill vacancies, occurring in list of party's candidates after general election ballots have been printed, in chairman of party committee exclusively, was not impliedly repealed by section 1550-5, authorizing committee to fill vacancies.

7. Statutes.—Repeals by implication are not favored, and will not be upheld, unless such intent clearly appears.

8. Statutes.—Where terms of statute are so in conflict with those of former statute that they cannot be harmonized, former statute is impliedly repealed.

9. Statutes.—It is court's duty to so construe statutes as to harmonize them and permit each to stand if possible.

10. Elections—Nomination of Candidate to Fill Vacancy on County Ticket After Ballots were Printed, Not Attended by Chairman of County Committee, Held Not Valid, Even had Requisite Number of Precinct Committeemen Been Presented (Ky. Stats., Sec. 1464).— Where chairman of county committee of party did not participate in nomination of candidate to fill vacancy on county ticket after ballots were printed, and was neither absent from county nor unable to attend nomination, nomination by committee was not valid in view of Kentucky Statutes, section 1464, even had meeting been attended by requisite number of precinct committeemen.

11. Elections—Convention of Party Members, Some of Whom were Not Precinct Committeemen, Held Not Legal Meeting of County Committee, so as to Authorize Chairman, in Absence of Committee Chairman, to Designate Candidate to Fill Vacancy on County Ticket (Ky. Stats., Sec. 1464).—Convention of few party members, some of whom were precinct committeemen and others were not, held not legal meeting of county committee, so as to authorize temporary chairman thereof, in absence of committee chairman, to designate candidate to fill vacancy on county ticket under Kentucky Statutes, section 1464.

12. Elections.—Where name of candidate receiving highest number of votes was illegally on ballot, candidate receiving next highest number of legal votes must be declared elected.

13. Elections.—Ky. Stats., section 1550-1, providing that candidates for elective offices to be voted for at general elections shall be nominated, applies only to candidate who seeks nomination for office. followed by printing his name on ballot as such nominee.

M. C. BEGLEY and MARTIN T. KELLY for appellant.

J. M. MUNCY and L. D. LEWIS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS— Reversing.

The appellee and contestee below, Boyd Mosely, was nominated at the August, 1925, primary election as the Republican candidate for county court clerk of Leslie county. The county election commissioners for the county duly and regularly canvassed the returns of the primary election and made and certified to a tabulation of the votes received by all candidates, which showed contestee to have received the nomination for the office named, and he was then and there given a certificate to that effect, and the board also filed with the county court clerk its tabulation, as is prescribed in section 1550-5 of the 1922 edition of Carroll's Statutes; but neither the board nor anyone representing it filed the certificate issued and given by it to contestee or any copy thereof with the county court clerk, and he did not file his certificate with that officer until September 26, 1926, which was much less than 45 days before the general election in November following the primary and which section 1456 of the same edition of the statutes prescribes as the minimum time for doing so. Notwithstanding such failure on the part of contestee, the clerk printed his name in the Republican column on the regular ballot to be voted in the November election as that party's nominated candidate for the office of county court clerk, and at that election there were counted and certified for him 1642 votes, and it being more than any other one received for that office, the county election commissioners issued to him a certificate of election; whereupon appellant and contestant below, Oma Lewis, instituted this contest against him claiming that at the regular November election in 1925 she received 296 votes by persons writing her name on the ballot and stamping in the square opposite it, and all of which she averred was legal and proper. She further averred that contestee received no legal votes at the general election in 1925, because his name was wrong-

fully and illegally printed on the ballot as the Republican nominee for the office of county court clerk, and that all the votes counted and certified for him were and are void She prayed that it be so adjudged and that she be declared duly elected to the office of county court clerk. since no one received at the election a greater number of legal votes than did she.

The answer denied the averments of the petition and affirmatively pleaded in other paragraphs, (1) that 815 of the total number of votes counted and certified for contestee were cast by the voters writing his name on the blank line in the Republican column under the office for which he was a candidate and stamping in the square opposite thereto and by reason thereof he received a considerable number of votes more than did contestant, even if it should be adjudged that his name was wrongfully and illegally printed on the ballot; (2) that the filing with the county court clerk by the county board of election commissioners its tabulation of the votes cast in the primary election was tantamount to the filing of a certificate of his nomination with that officer by himself or someone for him, and that, since it was done on the 6th day of August, 1925, it was sufficient in law; (3), that the filing of his certificate with the county court clerk by himself on September 26, 1925, was a substantial compliance with the provisions of the statute and, therefore, valid, and (4), that the Republican committee for the county late in the afternoon of Monday, November 2, 1925, met in Hyden under a special call for the purpose and nominated him as the Republican candidate for the office and issued to him a certificate to that effect which he immediately filed with the county court clerk, and that such proceeding had the effect to cure any invalidity in the printing of his name on the ballot by the county court clerk and legalized such action for all purposes. Appropriate pleadings put in issue all those affirmative defenses, and upon trial after proof taken the court dismissed appellant's petition, and complaining of that judgment she prosecutes this appeal.

There is nothing appearing in the record to impeach any of the votes certified to have been cast for contestant nor is there any proof to support an allegation in the answer to the effect that she was ineligible to hold the office. So that, the only questions to which we shall address ourselves in this opinion are the ones set out above,

and which we will now proceed to consider in the order named.

1. Defense (1) was properly pleaded and contestee asked that the ballot boxes be opened and the ballots examined in order to establish that defense, but he did not at the trial insist on that being done and it was not done. Since plaintiff's reply denied the defense, thereby casting the burden on contestee to prove it, his failure to discharge that burden eliminated the defense from the case, and no further reference will be made to it.

2. Defense (2) has heretofore been relied on in a number of cases in this court and in each instance it was disallowed. Among the more recent ones are, Daniel v. Blankenship, 177 Ky. 726, and Schanabel v. Sutton, 213 Ky. 116. There are a number of others to be found in the opinions in those two and there is no case from this court holding to the contrary. The reasons given in the opinions in those two cases and the others referred to in them are that the statute cast the duty on the candidate to see to it that the officer, whose duty it is to print the ballot for the regular election, is duly notified of his nomination in the manner prescribed by the statute and, which the opinions hold, is the certificate of nomination issued to the candidate by the board of election commissioners whose duty it is to canvass the returns of the primary election when the nomination is made in that manner. We will not repeat here the language of the court in so holding, since it may be readily found by consulting those opinions.

3. The cited domestic cases and those of King v. McMahan, 179 Ky. 536; Justice v. Justice, 184 Ky. 130, and Hewlett v. Carter, 194 Ky. 454, also dispose of defense (3) adversely to contestee, since they held that if the nominated candidate fails to file the certificate of his nomination with the officer authorized to print the ballots, either by himself or another at his instance, before the commencement of the minimum time prescribed by the statute (which those opinions held to be mandatory) the officer upon whom the law enjoins that duty has no right or authority to print the name of the candidate on the official ballot for the regular election as the party nominee for the office; and that if he does so when the nominating certificate is filed with him less than the minimum time prescribed for the purpose the votes cast for the candidate whose name is so printed are void

and will not be counted at the general election. We will not in this opinion undertake to justify such consequence as a wise or just one, since it would be a difficult if not an impossible task. We do not imply by the latter expression a criticism of our former opinions, because they are supported by an unescapable construction of our statutes and are in perfect accord with the opinions of appellate courts in all of the states of the union, and also all text publications, as embodying the correct construction of statutes similar to ours. What we mean to imply is, that our election laws should be so amended or modified by the legislature as to permit an *acknowledged* nominated candidate to have his name printed on the official ballot for the regular election at any time before the ballots are actually printed and which provisions if made would, we think, be both wise and wholesome and would enable not only the nominated candidate to obtain the fruits of his nomination but also give the people an opportunity to vote for the candidate of their choice. However, it is correctly pointed out in our cited opinions and those from other states that the minimum provision for the filing of such certificates is, we repeat, mandatory, and that being so a disregarding of it will render the printed name on the official ballot invalid. That question may now be considered as thoroughly settled, leaving the remedy to the legislature to provide for a different minimum time, or create a summary remedy similar to the one for primary elections contained in section 1550-27 of our present statutes. It is, therefore, clear that unless contestee can rely upon his alleged committee nomination contained in defense (4), his name was wrongfully and illegally printed on the ballot voted at the November, 1925, regular election, and the votes counted and certified for him are void and can not be counted; which brings us to a consideration of that defense.

4. Section 1464, which is a part of the statute relating to general elections, provides that where a nominated candidate whose nomination has been duly and properly certified and the ballots with his name thereon have been printed, dies or after such time removes or resigns, then "It shall be lawful for the chairman of the state, district or county political organization of which such candidate was a member to make a nomination to fill such vacancy, and to provide the election clerk of each precinct in which such candidate is to be voted for with a number of pasters containing only the name of such candidate," etc.

Section 1550-5 prescribes, *inter alia*: "That when a vacancy occurs after any nomination by death or otherwise, the governing authority of such party may provide for filling such vacancies and making such nominations; and when such nominations have been so made the certificates of nomination shall be signed by the chairman and secretary of the governing authority of the party making same, and shall be filed in the same manner as to certificates of nomination at a primary election." During the month of October, 1925, there were a number of cases before this court on a motion made before one of its members under the provisions of section 296 of the Civil Code of Practice relating to the dissolution or granting of injunctions, among which were those of Brandenburg v. Bradley, Clerk, from Lee county, and Doggett v. Barnes, County Clerk, from Bath county. In each of them the duly and regularly nominated candidate had failed to file his certificate of nomination before the county court clerk before the minimum time of 45 days prescribed in section 1456, *supra,* of the statutes and the political party committee of the county met before the printing of the ballots and designated the nominated candidates who had so failed to file their certificates as the party's nominees, and the questions involved were: First, whether such failure on the part of the nominated candidates created a vacancy in the nomination that could be filled by the committee under the provisions of the sections referred to, and second, whether if the vacancy did exist, it was competent for the committee to nominate the derelict candidate? The whole court sat on the hearing of those motions, and it was unanimously concluded that under the circumstances the failure of the nominated candidate to file his certificate in time was tantamount to resigning his nomination and that a vacancy was created thereby that could be filled by the *committee* in the manner provided by section 1550-5 *supra,* and that there was no legal obstacle to prevent it from nominating the candidate receiving the certificate but who failed to file it in time. While our conclusions in that character of proceeding are not binding as precedents, yet they may be considered for whatever persuasive effect they may have. We see no reason to depart from the conclusions reached on the hearing of those motions, and we now hold that when a nominated candidate fails to file his certificate until after the expiration of the minimum time provided therefor he in effect resigned his nomination and thereby creates

a vacancy that may be filled by the committee as provided in the statute, and that the negligent candidate may be so nominated.

But, when the alleged committee purported to nominate contestee in this case the ballots had already been printed for the general election, and in that case, as we have seen, the authority to fill the vacancy and to provide the means whereby a candidate for the particular office might be voted for, was vested by section 1464 exclusively in the *chairman* of the committee of the party in whose list of candidates such vacancy occurred, and the means whereby he could supply the name of a candidate on the ballot are, that he must designate one and prepare pasters to be attached on the already printed official ballot with the name of his designated candidate printed thereon. But, if the vacancy occurs before the official ballot is printed, then the duty to fill such vacancy is with the *committee* of the party in whose list of candidates the vacancy exists, as is provided in section 1550-5 *supra*. The two sections of the statute are not necessarily in conflict and we can readily perceive a reason for their separate enactment and application. The one (1464) vesting the authority in the chairman after the ballots have been printed necessarily deals with an emergency which must be taken care of at once without the loss of time in giving the necessary notices and procuring the attendance of a quorum of the committee; while the provisions of the other (1550-5) are broad enough, standing alone, to include all the time between the general election and the occurrence of such vacancy, yet it should not be construed to repeal by implication section 1464, since such repeals are not favored and will not be upheld, unless it clearly appears that it was the intention of the legislature in enacting the last statute to repeal the former one, which would be impliedly done where the terms of the later statute are so in conflict with those of the former one that they can not be harmonized. If they can be harmonized and each of them permitted to stand, it is the duty of courts to so construe them. Board of Education v. Sea, 167 Ky. 772; Thomas v. Hurst Home Ins. Co., 186 Ky. 178; City of Newport v. Klatch, 189 Ky. 300, and 25 R. C. L., beginning on page 1060 and including paragraphs 285-289, both inclusive. Following that rule it clearly appears that section 1550-5 should not be held to repeal by implication the prior enacted section of 1464. The former and last enacted section did not purport to expressly

repeal the latter one. Both of them can be harmonized and applied and there exist reasons why they should each be upheld and their provisions applied to the respective states of circumstances, i. e., that when a vacancy occurs in a nomination after it is made and before the ballots are printed it may be filled by the committee of the political party, but if the vacancy happens after the ballots are printed and, of course, before the general election it may and must be filled by the chairman of the committee of the political party in the manner provided in section 1464.

That being true the only one possessing the authority to fill the vacancy in this case was the chairman of the Republican county committee of Leslie county, and if he had been present at the alleged meeting of the committee when contestee claims to have been nominated by it and had voted and consented to such nomination we would have no hesitancy in concluding that it would have been valid, notwithstanding other members of the committee, or alleged members, concurred in such designation, since their concurrence would not impair the validity of the chairman's selection of the nominee.

However, at the meeting where contestee claims to have been nominated the *chairman* of the county Republican committee for Leslie county was not present, nor did he in any manner participate in the alleged nomination of contestee. If there had been a vacancy in the chairmanship and the meeting of the committee had been duly and regularly called and properly attended, no doubt it could have filled the vacancy by selecting a chairman who could then designate the nominee as provided by the statute, but, since there was no vacancy in the office of chairman the temporary one elected to preside over that particular meeting was not authorized to act, unless, perhaps, the regular chairman was either absent from the county or was from some legitimate cause unable to attend and participate and likewise unable to make the designation. No such facts existed in this case, and we are, therefore, constrained to hold that the alleged nomination by the committee was, for the reasons stated, not valid, even if that meeting had been attended by the requisite number of the precinct committeemen, but which the proof clearly shows was untrue. As appears from the record it was but a convention of a few Republicans, some of whom were, perhaps, committeemen from some of the precincts of the county, but others were not, and

if it were necessary for the determination of this case to ascertain whether or not that meeting was a legal one we would be compelled to hold for the reasons stated that it was not. It is, therefore, manifest that defense (4) is without merit and unavailable to contestee.

The cases, *supra,* from this court furthermore hold that where under the circumstances of this case the candidate receiving the highest number of votes, but whose name was illegally upon the ballot, can not be given the office, since the ballots purported to be cast for him were void and the candidate receiving the next highest number of legal votes shall be declared elected. There is no escape, therefore, from the conclusion that the court erred in dismissing the petition and in adjudging the contestee elected.

But it is strenuously insisted that none of the votes cast for contestant are legal for the reason, as argued, that she solicited the votes of the electors of the county and canvassed sections of the county for votes for herself, and thereby became an active candidate, and that being true, as is further argued, her name could not be written on the ballot, nor voted for because it would be contrary to the provisions of section 1550-1 of our present statutes. That section says in part: "Hereafter all candidates for elective offices to be voted for at any general election shall be nominated: (1) By a primary election held in accordance with the provisions of this act, or (2) by certificates of nomination signed and filed as herein provided." It requires but a casual reading of that language to demonstrate that it applies *only* to candidates who, in some manner provided by law, seek a *nomination* for the office followed by the printing of his name on the ballot as such nominee. It has no reference whatever to one who seeks the suffrage of the voters by having his name written on the ballot with a pencil and voted for on the general election day. We repeat that the language of the statute is so plainly susceptible to no other construction than the one outlined that we will spend no further time in its discussion. There is no escape, therefore, from the conclusion that the court erred in dismissing the petition and in adjudging the contestee elected.

Wherefore, the judgment is reversed, with directions to set it aside and to adjudge contestant duly elected to the office and for other necessary orders consistent with this opinion.