## Walker v. Horton, and Seven Other Cases.

(Decided June 21, 1938.)

KENNEDY & KENNEDY for appellants.

E. BERTRAM and DUNCAN & DUNCAN for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

The parties to the eight above-styled appeals were rival candidates at the regular November 1937 election held in Wayne county for the respective offices of county judge, county attorney, sheriff, clerk and tax commissioner and for justices of the peace in magisterial districts Nos. 1, 2 and 6, and I. N. Hurt and E. P. Bell were also rival candidates for the office of jailer.

On tabulation of the election returns it was ascertained that each of the appellees and I. N. Hurt, the Republican candidates for the respective offices above indicated, had received a majority of the votes cast and they were awarded certificates of election by the election commissioners.

Thereafter, appellants each instituted contest proceedings against their successful opponents and in addition to necessary formal allegations alleged in substance in each (1) that the contestee had failed to file his certificate of nomination with the county clerk as required by law, therefore, his name was illegally printed upon the official ballots and on all votes received by and counted for him and the certificate of election issued to him was illegal and void, and (2) that the contestee together with all of the Republican

candidates conspired with each other and with other persons to and did raise and contribute large sums of money, and used same and other things of value to buy, corrupt and influence voters to vote for them in violation of the Corrupt Practice Act, Kentucky Statutes, section 1565b-1 et seq. The petition in each of the contests, except as to the names of the parties and the office for which they were candidates, were identical. The answers of the various candidates were likewise identical consisting of a general denial of the material allegations of the petitions and alleging that they had filed their certificates of nomination with the clerk of the Wayne county court and by way of counter contest charged violation of the Corrupt Practice Act by the respective opposing candidates in the same way and manner as was charged against them in the petitions. Issues were completed by replies controverting the affirmative allegations of the answers.

Proof taken by deposition makes up 9 volumes of the record and it was agreed that the depositions insofar as pertinent should be read and considered in the hearing of each of the contests. Contestants by motion supported by affidavits requested the regular judge of the Wayne circuit court to vacate the bench because of his relationship to parties to some of the actions. He overruled the motion and refused to vacate except in the case of Lisco Gossage, contestant, against Charles Burnett, contestee, and E. P. Bell, contestant, against I. N. Hurt, contestee, but vacated the bench in those cases because of his relationship to parties. That fact having been certified to the Chief Justice of this court a special judge was designated to and did proceed to hear those cases.

The regular judge rendered an opinion which appears in the record and adjudged in each of the cases heard by him that the contestant was not entitled to the relief sought; that the petition be dismissed and that contestee recover his costs; that the contestee was not entitled to the relief sought in his counterclaim and that same be dismissed and that the contestant recover his costs incident thereto. These appeals are from that judgment, and a motion of each of appellees for a cross appeal has been sustained.

The special judge who heard the other two cases also rendered a written opinion which appears in the

record and in the case of Gossage v. Burnett adjudged that the contestant was not entitled to the relief sought; that his petition be dismissed and that contestee recover his costs; that the contestee was not entitled to the relief sought in his counter-claim and that same be dismissed and that contestant recover his costs incident thereto. The last above-styled appeal is from that judgment and appellee's motion for a cross appeal has been sustained.

Two of the grounds relied on for reversal by appellants are in substance and effect the same as the grounds of contest stated in their petition, (1) that the appellees did not file their certificates of nomination as required by law and (2) that they violated the Corrupt Practice Act. In addition to those grounds it is also argued that the relationship of the regular judge to the parties in some of the actions disqualified him from presiding in the trial of the others.

The evidence discloses that in the Republican primary none of the candidates except J. C. Davis, G. P. Tate and S. E. Anderson had opposition. After the primary the election commissioners met, tabulated the returns and made out certificates of nomination for the successful candidates who had opposition, but as was the usual and prevailing custom in that county did not deliver such certificates to the candidates but left them in a book for that purpose kept in the office of the county court clerk.

Under section 1550-9, Kentucky Statutes, it was the duty of the county court clerk when the time expired for filing applications and declarations for places on the primary ballot to issue to the candidates having no opposition a certificate of nomination, but it was found by both the regular judge who tried seven of the cases and by the special judge who tried the other two that there was no affirmative evidence showing that the county clerk had complied with his duty under that section of the statute; however, under the prevailing rule that in the absence of proof to the contrary, an officer will be presumed to have done his duty, such presumption was indulged by each of them.

In Daniel v. Blankenship, 177 Ky. 726, 198 S. W. 48, it was held in substance that to issue a certificate of nomination as required by subsections 9 and 26 of section 1550, Kentucky Statutes, meant to properly

make out and sign the certificate and to deliver it into the control of the candidate. There is evidence that the clerk did not actually deliver the certificates of nomination to the various candidates who had no opposition, so the presumption should only be indulged that he otherwise did his duty by properly making out and signing such certificates. It is the duty of the county clerk to certify the names of nominees who are entitled to and desire to have their names printed upon the official ballots and the purpose of requiring certificates of nomination to be filed with him is that he may properly certify such names. There are a number of cases from this jurisdiction holding that the provisions of the statute relating to the filing of certificates of nomination are mandatory and that the candidate himself or some one for him must file his certificate before he is entitled to have his name printed upon the official ballots. See Daniel v. Blankenship, supra; Justice v. Justice, 184 Ky. 130, 211 S. W. 419; Brodie v. Hook, 135 Ky. 87, 121 S. W. 979; Lewis v. Mosely, 215 Ky. 573, 286 S. W. 793; Hardin v. Horn, 184 Ky. 548, 212 S. W. 573. However, in Schnabel v. Sutton, 213 Ky. 116, 280 S. W. 488, and other cases, it has been held that a substantial rather than a technical compliance with the requirements of the statute is sufficient.

In Daniel v. Blankenship, supra, the clerk had issued a certificate of nomination to a candidate who had no opposition in the primary and the certificate had been delivered into the custody of the candidate. It was held in effect that that certificate as well as certificates of nomination made out by election commissioners and delivered to the successful candidates should be filed by such candidates with the county court clerk. Two of the judges dissented from so much of the opinion as held it was necessary for a candidate who was nominated without opposition to file his certificate with the clerk before being entitled to have his name printed on the ballots.

It has been held in a number of cases that where a candidate delivers his certificate of nomination to the clerk with a request that it be filed he has complied with the requirements of the statutes and is entitled to have his name printed on the ballots notwithstanding the clerk may neglect to mark the certificate "filed." In Schnabel v. Sutton, supra, it was held in effect that the statute requiring a certificate of nomination to be

filed by a nominee with the clerk is mandatory but that the clerk is not required to make any record of the filing and the fact that he receives it is sufficient. In James v. Buster, 234 Ky. 462, 28 S. W. (2d) 501, the election commissioners, as in this instance, and as was the usual custom in that county, made out the certificates of nomination but left them in a book kept in the county court clerk's office. Buster, the Democratic nominee for sheriff, was under the impression then generally prevailing that it was necessary to file a certificate of nomination with the clerk more than 45 days before the election and went to the county court clerk's office with a purpose to obtain and file his certificate of nomination with the clerk, but was advised by the clerk that the certificate might be filed at any time more than 15 days before the election. Thereafter, and more than 15 days before the election, he again went into the clerk's office to ascertain whether the certificate had been filed and learned that it had not been so endorsed by the clerk. A deputy clerk handed the certificate to him and told him to hand it back to her and she then marked it "filed." The court found it unnecessary to determine the question as to whether a certificate of nomination should be filed more than 45 days before the election. It held in effect that if such was the requirement there had been a substantial compliance with the statute and in the course of the opinion it was said (page 503):

"It was not necessary for the appellee to have manual possession of the certificate. It was in the clerk's possession, and all that was required of appellee was to request the clerk to file it. This he did in effect in September. * * * The clerk had his certificate in his possession, and received notice more than 45 days before the election that appellee desired to file it. The appellee had done all that was required of him, and his act amounted to a filing in law."

There is evidence in this case that all the Republican nominees except one candidate for justice of the peace met at the office of contestee, J. C. Davis, after the primary. He asked them if they had filed their certificate of nomination and on receiving a negative reply advised them that that was necessary. The other candidates requested, authorized and delegated him to file their certificates for them; that he went to the clerk's office accompanied by another and requested the deputy

clerk to file the certificates of nomination for the Republican candidates; that she told him she would attend to the matter. A number of candidates testified that they later went to the office and asked the deputy if the certificates had been filed and she replied in the affirmative. A justice of the peace who had not attended the meeting of the nominees was notified by Mr. Davis that it was necessary that this certificate of nomination be filed and he went to the clerk's office and had his certificate filed. The deputy testified that Mr. Davis did not request that the certificates be filed but apparently she did not understand the importance of filing the certificates since she was a Democratic nominee and failed to file her own.

Both the regular and special judge concluded from the evidence that Mr. Davis did request that certificates of nomination be filed but the special judge held that the request only applied to the certificates of nomination made out by the election commissioners and not to those issued by the clerk to nominees who were unopposed in the primary.

This case cannot be distinguished from the case of James v. Buster, supra, in so far as the certificate made out by election commissioners is concerned; and as above indicated it must be presumed that the clerk made out and signed certificates of nomination for the Republican candidates who were unopposed in the primary, and that since he failed to deliver them to the candidates they were still in his possession. It is our conclusion from the evidence that Mr. Davis' request that the certificates be filed applied to all certificates of Republican nominees whether made out by the election commissioners or the county clerk and as held in James v. Buster, supra, there was a substantial compliance with the requirements of the statute.

Both the regular and the special judge found that neither the charge of contestants that contestees had violated the Corrupt Practice Act nor the counter-charge by contestees that contestants had violated the Corrupt Practice Act was sustained by the evidence. We have carefully read and considered all the evidence introduced to sustain these charges and counter-charges. The pre-election and post election expense accounts filed by the various candidates of each party and which they testified were correct show the expendi-

tures by each of them were comparatively small and for legitimate purposes. Neither side sustained the charge that the candidates on the other side contributed to a large fund that was used to bribe voters or otherwise corrupt the election. The evidence shows that contributions by Republican candidates and others to a common campaign fund amounted to less than $500 which was used to hire automobiles to convey voters to the polls and for other legitimate purposes. The common campaign fund raised by contributions of Democratic candidates and others was approximately the same as that raised by the Republican candidates and the evidence shows that it was used for similar purposes. There is evidence that the father-in-law of one of the Republican candidates gave money to Republican workers to be used in behalf of such candidate and that it was used to influence voters. There is also evidence that the father of one of the Democratic candidates gave money to Democratic workers to be used to influence voters. There is no evidence to show that either of these candidates or any of the other candidates knew of or had any connection with these transactions. A number of witnesses testified that they received money to vote for the contestants and others that they received money to vote for the contestees, and there is evidence of activity on the part of workers for candidates of the respective parties in Ground Hog and other precincts tending to indicate that money was being used. Practically all of the witnesses who testified that they received money to vote and some of the others who testified that they saw money being given to voters by workers were impeached and discredited by other witnesses. However, the evidence does not show such wide spread use of money or other things of value to corrupt the voters as would give rise to the conclusion or a reasonable inference that the candidates must have known of such activities and there is little if anything of probative value and consequence to indicate that any of them did actually have such knowledge. As said in substance in the opinion of the special judge the evidence does nothing more than raise a suspicion of such knowledge on the part of the candidates and suspicion alone is not sufficient. Neither does the evidence warrant a conclusion that the use of money or other things for improper purposes materially affected the result of the election. Since the finding

of the chancellors respecting the alleged violation of the Corrupt Practice Act is fully sustained by the evidence we must concur in their finding and conclusions in that particular.

It is further argued that the judgments should be reversed because of the failure of the judge to vacate the bench upon the motion of contestees because of his relationship to parties to some of the actions. Apparently counsel for the respective parties are under the impression that such motion supported by affidavits was made in each of the cases but if this were true, the record in some of the appeals does not so show. Be that as it may, these were separate actions and were not consolidated but it was only agreed that the depositions taken, in so far as pertinent, would be considered in each of the cases. The regular judge vacated the bench because of his relationship to the contestees in two cases. In one of the other cases it was made to appear by affidavit that he was related to the contestant "in the second degree." Certainly a contestant could not complain of a relationship of the judge to him. In the circumstances shown it is our conclusion that the judgment should not be reversed because of the failure of the regular judge to vacate the bench in any of the cases heard by him. In passing it may be appropriately pointed out that the regular and the special judge reached the same conclusions concerning all matters except as to whether or not the request of J. C. Davis to the county clerk related to and included the certificates of nomination made out by the county clerk as well as the certificates made out by the election commissioners; and as will be seen, we have adopted the views of the former on that question.

Wherefore the judgment in each of the cases is affirmed on both the original and the cross appeals.

Whole court sitting, except Clay, J., who was absent.