# DECISIONS

OF THE

# Court of Appeals of Kentucky.

## SEPTEMBER TERM, 1904.

CASE 1—PROSECUTION AGAINST THE STANDARD OIL COMPANY FOR RE-
TAILING OIL WITHOUT A LICENSE.—NOVEMBER 11.

### Standard Oil Co. v. Commonwealth.

APPEAL FROM OLDHAM CIRCUIT COURT—R. F. PEAK, CIRCUIT JUDGE.

DEFENDANT CONVICTED AND APPEALS. AFFIRMED.

LICENSE—RETAILERS—SELLING OIL FROM TANK WAGON.

1. Selling and delivering oil from a tank wagon to merchants
   in quantities of not less than twenty-five gallons, for resale to
   customers, is a "selling by retail," within Acts 1902, pp. 353,
   355, c. 128, art. 10, secs. 25, 32, requiring the seller to first pro-
   cure a license.
2. Where oil is sold and delivered from a tank wagon to retail dealers
   for resale, the transactions are within Ky. St. 1903, sec. 4224, re-
   quiring a license and payment of a fee of $5 per year; but if such
   sales are to others than retail dealers, the transactions are ped-
   dling, requiring a peddler's license, and payment of a fee of $50
   per year for one person with a two-horse wagon, etc.

HUMPHREY, HINES & HUMPHREEY, FOR APPELLANT.

N. B. HAYS, FOR APPELLEE.
   (No briefs—record misplaced.)

OPINION OF THE COURT BY JUDGE O'REAR—AFFIRMING.

By an act which became a law March 29, 1902 (Acts
1902, pp. 281-392, c. 128; section 4224, Ky. St., 1903), the
General Assembly re-enacted and substantially amended the

revenue laws of the State. Among the subjects of taxation treated of in this comprehensive statute was that of licenses exacted for various occupations, including peddling. Sections 25 and 32 of article 10 of the act, concerning licenses, read in part: "Before engaging in any occupation, or selling any article named in this subdivision three of article ten of this act, the person desiring to do so shall procure a license and pay the tax thereon as follows: . . . To selling by retail, petroleum, lubricating or other oils for each wagon used in transporting or retailing such oils, five dollars." Appellant was indicted and convicted for a violation of this statute, under the following state of facts: It is agreed that the Standard Oil Company is a corporation; that it sells coal oil in Oldham county by transporting same in tank wagons which contain from 300 to 600 gallons of oil; that within 12 months before the finding of this indictment defendant, by its agent or driver. sold coal oil to R. O. Duncan, R. B. Blakemore, Ballard Bros., and to Goldsborough & Co.; that each of these purchasers were at the time retail merchants in La Grange, who dealt in coal oil; that the said oil so bought was resold by said purchasers to consumers of oil in small quantities; that in no instance did defendant sell less than 25 gallons of coal oil to any one purchaser at any one time; that the driver of the wagon drove up to the storehouses of the respective purchasers aforesaid, and asked if any oil was needed or required, and he did furnish such quantity as was required or needed; that as to each of said witnesses or purchasers oil was purchased at the time in the quantity above named, and in some instances the cash was paid to the driver for the oil, and in some instances a receipt merely was taken, and the price was collected through the Louisville office. It is agreed that defendant, by its said wagon, sold and delivered in a similar way coal oil to other retail merchants in Oldham county, Ky., but not

Standard Oil Co. v. Commonwealth.

in less quantity, at any one time, than 25 gallons; and the defendant had no license for said selling and transporting said oil.  There was no agreement between the driver and merchant that he was to deliver and sell 25 gallons of oil, or any other quantity, more or less.

This appeal, bringing in question the conviction on the above facts, presents the section of the statute quoted above for construction.  It is conceded that the Legislature had the right to tax occupations, including that of selling oils, whether by retail or wholesale.  Also that it had the power to exact a license tax of peddlers.  Appellant contends that under certain state of facts—as where it sells oil in small quantities from its itinerant wagons direct to consumers, not merchants, for their own use—it may be a peddler. Standard Oil Co. v. Commonwealth, 80 S. W., 1150, 26 Ky. Law Rep., 142.  This, it argues, is selling by retail, and is the only selling of oil by retail covered by any statute; that, therefore, the act of 1902 must be held to repeal the peddler's statute wherein they conflict—that is, in the matter of selling oils—for it can not be presumed that the Legislature intended to tax twice the same occupation by the same person.  It is true that this court has held that selling oil by retail by appellant's wagons traveling from house to house or point to point, where the sale is not to a merchant for resale, is peddling within the terms of the statute on the subject, which reads: "All itinerant persons vending lightning rods, patent rights, or territory for the sale, use or manufacture of patent rights, goods, wares, merchandise, clocks, watches, jewelry, gold, silver or plated ware, spectacles, drugs, nostrums, perfumery, and any other thing not hereinafter specially exempt, shall be deemed peddlers."

The license tax required of peddlers by this same statute is $50 for one person with two horse wagon, and for one

person with one horse wagon $40, one person on horseback $30, and for one person on foot $20. For one county alone, one-fourth the tax just named is exacted. If the purpose of the Legislature was to raise revenue—and it was, mainly— it could not have meant that peddlers of oils were allowed to follow that vocation for $5 for each wagon used anywhere in the State, when for peddling every other article subject to the statute $50, or at least $40, was charged. If the purpose was in any part the police regulation of itinerants, the nature of whose business and character of whose goods afforded them opportunities for preying on the public by palming off inferior articles, and evading an accounting where the transaction occurred by their constant moving from place to place, then there could have been no reason for the discrimination in favor of oil peddlers. The section first quoted is a new one in the statute. The peddler's statute is an old one. Both appearing in the re-enacted law, we must conclude that the Legislature meant that the one should supplement the other, should cover some case not embraced by the other.

Appellant contends, however the argument just noticed may be disposed of, that it was not guilty under this statute, because the agreed facts show that the sales complained of were not retail, but were wholesale, transactions. Lexicographers are cited to the effect that retail means "to sell in small quantities or at second hand; to deal out or dispose of in small quantities;" while "wholesale" is defined as "sales of goods in large quantities to retailers; sale in the gross." The definitions given are undoubtedly correct as applied to current transactions. Were we left to the mere words of the section infringed, it might be difficult, if not impossible, to give the word "retail" another meaning. But we have just seen that that section is only one of a very com-

prehensive scheme of taxation; that under the same head—licenses—other provisions are found so out of accord with the interpretation urged by appellant that we can not believe the Legislature had the intention of enacting in the same statute such repugnancies of purpose and principle. While it is true that in construing words of common use they are to be given their popular meaning, yet that is not the only rule of interpretation. The first and most indispensable rule is to find the subject of the statute, to understand what was intended by it. In the Eureka case, 4 Sawy., 302, Fed. Cas., No. 4,548, Mr. Justice Field said: "Instances without number exist where the meaning of words in a statute has been enlarged or restricted and qualified to carry out the intention of the Legislature." Reading all the provisions together, as must be done, and as it is the universal rule of interpretation in this country and England where there is doubt or apparent conflict, in order to arrive at the legislative intent, we conclude that it was not the purpose of the Legislature to reduce the license tax to oil peddlers, but to bring into the license system a branch of business not hitherto embraced by the statute. Itinerant salesmen who carry their wares with them and deliver as they go, have been the subject of licenses since the earliest days of the Commonwealth. 5 Litt. St. Laws Ky., p. 114; Morehead & B. Ky. St., p. 1259. The business of vending oils by delivering from tank wagons passing through the country at regular intervals is a modern method, having been employed in this State for but a few years past. The first case brought to the attention of the court is Standard Oil Co. v. Commonwealth, 107 Ky., 606, 55 S. W., 8, 21 Ky. Law Rep., 1339, decided in January, 1900. That case was followed in the case of Hays v. Commonwealth, 107 Ky., 655, 21 R., 1418, 55 S. W., 425. In each of these cases appellant

had been indicted for peddling without license. It was held that sales from appellant's wagons to merchants for resale was not peddling. In the later case of Standard Oil Co. v. Commonwealth, 80 S. W., 1150, 26 Ky. Law Rep., 142, it was held that sales from similar wagons to consumers, not merchants for resale, was peddling. The law then stood that itinerant vendors of oil to merchants for resale were not required to take out a license, while all other itinerant vendors of other articles (save a few specially exempt), and even itinerant vendors of oils to others than to merchants for resale, were required to obtain licenses before plying their vocations. The statute under consideration should be read in the light of these conditions, for it was passed after the last cited case was reported. As the selling of oils to merchants is not different from the danger originally thought to warrant licensing peddlers generally, except in the degree; as they had the same protection of the laws of the Commonwealth, and the same use of her public highways, kept up by taxation of citizens and their property—it is easy to believe that the Legislature intended to include such persons in the list of those from whom license taxes were to be collected. It must have been known to the Legislature that the custom had grown up lately and extensively of supplying retail merchants with oils for resale by delivery from wagons going about from place to place at intervals. The language of the section indicates that they must have had such knowledge in mind, for it deals directly with the subject of transporting oils by wagons. The unit of taxation is the wagon used in the business for transporting oil for sale. The section says "by retail." As there was already in force an ample statute, re-enacted by this same act, covering such sales to consumers; it must be that the sales not embraced by the old statute were intended. Those

Standard Oil Co. v. Commonwealth.

were the sales to merchants for resale. The Century Dictionary defines the expression "at retail" as being "in small quantities; a little at a time." As this is an accepted and popular meaning of the expression, as well as the one of selling at second hand, we are warranted, in view of the context of the act, in holding that the former definition was the sense in which the Legislature employed the term; and that sales to merchants, though commercially wholesale transactions, were, in contemplation of this statute, retailing.

The judgment of the circuit court in conformity herewith is affirmed.

Response to petition for rehearing by Judge O'Rear:

Appellant thinks the opinion is not clear in its meaning. We decide that in sales by appellant and others doing similar business, where the oils are delivered from its wagons, and the sales are to retail dealers for resale, the transaction comes under section 4224, Ky. St., 1903, involved in the appeal. For each wagon so engaged a license fee of $5 per annum must be paid, which is the license fee for the use of that wagon anywhere in the State. If the sales from the wagon are to others than retail dealers for resale, the act is peddling (Standard Oil Co. v. Commonwealth, 80 S. W., 1150, 26 Ky. Law Rep., 142); and, to do that character of business, appellant must take out a peddler's license, being $50 per year for one person with two horse wagon, $40 for one person with one horse wagon, and $20 additional for each additional person accompanying the wagon. Those fees are for the whole State. For the county, one-fourth as much as is charged for the whole State.