Crabtree v. Dawson.

---

CASE 20—ACTION BY ROY CRABTREE AGAINST JOHN T. DAWSON FOR
ASSAULT AND BATTERY.—NOV. 29.

# Crabtree v. Dawson.

APPEAL FROM DAVIESS CIRCUIT COURT—T. F. BIRKHEAD, CIRCUIT
JUDGE.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.  REVERSED.

ASSAULT AND BATTERY—MISTAKE—LIABILITY FOR DAMAGES—INSTRUC-
TIONS.

1. Where defendant, when he struck plaintiff, believed, and,
   in the exercise of the highest degree of care practicable under
   the circumstances to ascertain the truth, had reasonable grounds
   to believe, that he was N., and that it was necessary, in the
   exercise of a reasonable judgment, to strike N. to defend him-
   self from a threatened attack about to be made on him by N.,
   and used no more force than was necessary, or appeared to him
   necessary, for such purpose, he is excused from liability on the
   ground of self-defense and apparent necessity.
2. Where defendant recklessly and wantonly struck plaintiff, though
   thinking he was striking another in self-defense, he is liable for
   exemplary as well as compensatory damages.

Crabtree v. Dawson.

3. Where defendant, to be excused from liability for striking plaintiff, thinking he was striking N. in self-defense, must have used the highest degree of care practicable under the circumstances to ascertain whether the person he was about to strike was N., it is not enough to charge that he must have used due care and diligence.
4. An instruction in an action for assault and battery is erroneous in specifically calling the attention of the jury in detail to the facts testified to by defendant, and relied on to excuse his conduct.

J. D. ATCHISON AND LAURENCE P. TANNER, FOR APPELLANT.

1. The verdict of the jury was not sustained by the evidence, and was contrary to law, and it should have been for appellant. Robinson v. Hawkins, 4 T. B. Mon., 135; Cox, &c. v. Cooke, 1 J. J. Mar., 360; McIlvay v. Cockran, 2 A. K. Mar., 276.

2. The court erred in giving instructions to the jury which were objected to by appellant. Johnson v. Williams, &c., 111 Ky., 291; Commonwealth of Kentucky v. Hunt, 23 R., 1171; Cushman v. Ryan, 1 Story (U. S.), 100; 2 Am. & Eng. Ency. of Law (2d Ed.), 957; Summers v. State (Tex.), 33 S. W. Rep., 124.

3. The court erred in refusing to instruct the jury as in instructions 9, 10, 11, 12 and 13 offered by appellant but refused by the court. Mercer v. Corbin, 3 L. R. A., 221 (Ind.); Peterson v. Haffner, 59 Ind., 130, 26 Am. Rep., 81; State v. Myers, 19 Iowa, 517; Vosburg v. Putney, 14 L. R. A., 226 (Wis.); Borland v. Barrett, 44 Am. Rep., 152; Cooley on Torts, pp. 98, 99; 3 Sutherland on Damages, 714; Ryan, &c. v. Quinn, 24 Ky. Law Rep., 1513; Snyder v. McGill, 23 Ky. Law Rep., 587; Joyce on Damages, sec. 367; Brown v. Evans, 17 Fed. Rep., 912.

WILFRED CARRICO AND LA VEGA CLEMENTS, ATTORNEYS FOR APPELLEE.

The question in this case is: Did appellee have reasonable grounds for believing that appellant was Ollie Noble, and, if so, did he have the right to strike under all the circumstances?

We submit that under the facts appellee was clearly justified in believing that appellant was Noble at the time he struck him, and that if appellant had been Noble the striking would have been justifiable.

### AUTHORITIES CITED.

Hugh's Criminal Law, sec. 2452; Roberson's Kentucky Criminal Law, vol. 1, pp, 21, 752, 754; Herron v. Dermody, 15 R.,

703; Hart v. Com., 8 R., 714; Thompson v. Minnaghan, 23 Am. Rep., 434; Welsh v. Durand, 4 Am. Rep., 55; Joyce on Damages, vol. 1, sec. 367.

OPINION OF THE COURT BY CHIEF JUSTICE BURNAM—REVERSING.

This action for assault and battery instituted by appellant, Roy Crabtree, against the appellee, John T. Dawson, grew out of the following facts: Appellee, Dawson, owns a three-story building on the corner of Main and Locust streets, in Owensboro, Ky. The room on the first floor is used as a business house. The second floor is divided by a partition, the room on one side being used for private entertainments. The third floor is a large hall, which was rented by appellee for dancing and public entertainments. The following diagram of the second floor will give a fair understanding of the location of the parties and place at the time of the assault:

A is Dawson at the head of the stairs when he struck Crabtree. The red mark* is the stairway leading from the store to the landing of the second floor. B is a door enter-

---

*The red mark is designated with dotted lines in the diagram.

ing the storeroom from the landing, which is about six feet wide, and which Dawson opened to get the musket with which he struck appellant. C is a door opening into the entertainment hall on the second floor. D, D, are two windows looking from the second floor to the third floor. E is a storeroom on the second floor, and F is the hall on the second floor. On the night on which this accident occurred, Dawson had rented the large hall in the third story to Philip Dorn and Ed Riney to give what was known as a "pay dance" for the benefit of the young people of the city. On the same night the daughter of appellee and a number of friends were giving a social entertainment in the small hall on the second floor. While these two entertainments were in progress, one Noble, while intoxicated, gained admittance to the hall on the third floor, without having paid the customary charge for admittance. Riney, one of the lessees, approached him, and insisted that he should either pay or leave the hall. He at first refused, but finally Riney succeeded in enticing him out of the room into the hall, and then closing the door, leaving Noble on the outside. He became disorderly, thereby attracting the attention of Dawson, who approached him. Dawson's version of what took place after this is as follows: "Noble remarked that he was going back and clean out the whole thing, and I said, 'No, you won't, friend.' He replied, 'I am doing no harm.' I told him he must go downstairs. He said that he would not. I replied, 'You will,' and took hold of him. He went down. I may have shoved him a little. He stopped in front of the door of the hall on the second floor, where he tried to go in. I pushed him by, and got down to the platform on the first floor, where he sat down. He then got up and said, 'If you will come down here, I will fix it with you.' I replied, 'I don't want to bother with you.'

This platform goes into my storeroom. And when I got
up to the head of the steps, somebody remarked, 'He is get-
ting some bricks.' I stepped into the door and got an old
musket. Just then Crabtree came running rapidly up the
steps from the store below. I believed it was Noble return-
ing to attack me, and called out to him, 'Don't come up
here;' but he paid no attention to me, and, when he got up
within striking distance, supposing it was Noble, I struck
him with the butt of the musket, when I discovered that I
had made a mistake and hit the wrong man." It is also
shown that the hall at this point was somewhat dimly light-
ed, and that after appellee discovered his mistake he took
appellant to a drug store, had his wounds dressed by a phy-
sician, and sent him home in a carriage, and that he went the
next day to express his regret at the occurrence, and offered
to pay his doctor's bill, for loss of time, and for a new suit
of clothes, the one worn by appellant having been greatly
injured. The testimony for plaintiff is to the effect that he
was only 17 years old; that he was on his way as a guest
to the dance being given in the hall on the third floor; that,
whilst he heard Dawson tell Noble not to come back at the
time he pushed him out of the store, he did not hear any
one call to him not to come up; that, as a result of the blow,
he was knocked to the bottom of the steps, and sustained
serious injuries. The jury, on these facts and the instruc-
tions given by the court, returned a verdict for the defendant,
and plaintiff has appealed.

The main ground for reversal is that the court did not
properly instruct the jury. As the question is a somewhat
novel one, we deem it best at this point to insert the instruc-
tions in full. They are as follows:

"(1) The court instructs the jury that if they believe from
the evidence that the defendant on the ——— day of November,

1903, did wrongfully, willfully, recklessly, or unlawfully assault, beat, bruise, or wound the plaintiff by striking him violently on the head with the butt of a heavy gun or musket, thereby inflicting a dangerous wound on his head, from the effect of which assault and wounding the plaintiff suffered physical and mental pain and anguish, and was damaged thereby, they should find for the plaintiff such a sum of money as will reasonably compensate for the physical and mental pain which he sustained as the proximate result of said assault, not exceeding the sum of $5,000.

"(2) The court further instructs the· jury that if they believe from the evidence that the assault of the defendant on the plaintiff was willful and reckless, and the defendant did not believe or have reasonable grounds to believe when he made said assault that the person he was assaulting was Ollie Noble, then they may find any sum as punitive damages in favor of the plaintiff, provided, however, all damages they may find for the plaintiff do not exceed in the aggregate the sum of $5,000.

"(3) The court further instructs the jury that if they believe from the evidence that the striking of the plaintiff by the defendant as set out in the petition was unintentional, and they further believe that it was recklessly committed by the defendant, and that the defendant did ·not use ordinary care and· diligence, considering all the circumstances, to discover who the person was that he was about to strike before he struck, then the law is for the plaintiff, and the jury should find for the plaintiff; and, if they find for the plaintiff, the measure of their finding should ·be such sum as will reasonably compensate the plaintiff for the physical and mental pain which he sustained as the proxi·

male result of said striking or assault, not exceeding the sum of all as mentioned in instruction No. 1.

"(4) The court further instructs the jury that if they believe from the evidence that the defendant believed and had reasonable ground to believe, that the person whom he struck was Ollie Noble, and said Noble had been on the premises of the defendant immediately before said assault, and had been ordered to leave defendant's premises, and had threatened to return and assault the defendant or his guests, and the defendant believed, and had reasonable grounds to believe, that when the plaintiff was coming up his stairway that it was Ollie Noble, and that it was necessary to strike the plaintiff in order to defend himself and his guests from the threatened attack upon him and his guests, and the defendant used due care and diligence, considering all the circumstances and facts surrounding him, and his connection with said Noble, immediately before said time, and unintentionally struck the plaintiff, mistaking the plaintiff for the said Noble, then the law is for the defendant, and the jury should so find.

"(5) The court further instructs the jury that if they believe from the evidence that at the time the defendant assaulted the plaintiff he had just previously thereto had a difficulty with one Noble, and he had ordered said Noble to leave the premises, and took him out of his house, and that said Noble threatened to immediately return to the defendant's house, and threatened to assault the defendant, and immediately thereafter he did see the plaintiff coming up the plaintiff's stairway on his premises, and, after exercising due care to ascertain whether or not it was Noble, did believe the plaintiff to be said Noble, and defendant was in the exercise of reasonable care for his own safety and protection of his property and guests, and in his own house,

and was also reasonably careful and exercised due care to discover whether the person he was about to strike or assault was, or not, the said Noble, and they further believe that before striking the plaintiff he ordered the plaintiff to leave defendant's premises, and the plaintiff did not do so, or offer to leave, and the defendant believed at the time he struck the person he was about to strike Ollie Noble, that he was then in danger of great bodily harm or death at the hands of the said Noble, and that it was necessary to strike him in order to protect his guests, property, family, or himself, from the threatened assault, and he had used no more force than was reasonably necessary to protect himself, his guests, or his property, from said assault, then the law is for the defendant, and the jury should so find, except they believe from the evidence that the defendant used more force and violence in striking than was necessary to eject the person from his premises, if he believed it to be Ollie Noble, or more force and violence, than was necessary to protect his property, his guests, his family, and himself from the threatened assault of said Ollie Noble.

"(6) The court further instructs the jury that if they believe from the evidence that the striking of the plaintiff by the defendant was unintentional, and that the defendant was intending to strike one Ollie Noble, and that the defendant would not have struck the plaintiff, except for the plaintiff's own carelessness and negligence in coming up the stair way of the defendant, and they further believe that the plaintiff's own carelessness and negligence contributed to and brought about the damages now complained of, then the law is for the defendant, and the jury should so find.

"(7) 'Due care,' as used in the foregoing instructions, is that degree of care that a prudent man would exercise under the same or similar circumstances.

"(8) The court further instructs the jury that if they believe from the evidence that the striking of the plaintiff by the defendant on the occasion mentioned in instruction No. 1 was willful or reckless, or that the defendant did not exercise due care in ascertaining whom he was about to strike, then the jury can not consider mitigating circumstances, as against the actual damage that the plaintiff sustained by such striking, but can only consider the mitigating circumstances and the justification, if any, of the defendant, in so far as it affects the punitive damages sought to be recovered in this action."

Both the plaintiff and defendant excepted to all the instructions given by the court, and offered instructions covering their respective views of the law. Those offered by appellant were based upon the theory that he was, in any contingency, under the admitted facts of the case, entitled to compensatory damages for the injuries resulting from the assault and battery made upon him by the defendant. On the other hand, those offered by defendant are based upon the theory that if he believed, and had reasonable grounds to believe, at the time he struck plaintiff, that it was Ollie Noble whom he was striking, and that it appeared to him to be necessary in order to protect himself or guests from a threatened assault at the hands of Noble, he was excusable on the grounds of apparent necessity and self-defense. From a careful examination of the decisions of this court and those of other jurisdictions, we feel warranted in asserting that no one is liable, civilly or criminally, for an unintentional consequential injury which resulted from a lawful act, where neither negligence nor folly can be imputed to him, and that the burden of proving negligence or folly, where the act is lawful, is always upon the plaintiff. In other words, that the foundation of defendant's liability in all such cases

Crabtree v. Dawson.

is negligence, or the failure on his part to exercise that degree of care to avoid making a mistake which an ordinarily prudent man would exercise under the same or similar circumstances. A very full discussion of this class of cases is found in Morris v. Platt, 32 Conn., 84. As this is the oldest and best considered case on the subject to which our attention has been directed, we quote from it liberally as follows: "An accident is an event or occurrence which happens unexpectedly, from the uncontrollable operations of nature alone, and without human agency, as when a house is stricken and burned by lightning, or blown down by tempest, or in an event resulting undesignedly and unexpectedly from human agency alone, or from the joint operation of both; and a classification which will embrace all the cases of any authority may easily be made. In the first class are all those which are inevitable or absolutely unavoidable, because affected or influenced by the uncontrollable operations of nature; in the second class, those which result from human agency alone, but were unavoidable under the circumstances; and in the third class, those which were avoidable, because the act was not called for by any duty or necessity, and the injury resulted from the want of that extraordinary care which the law reasonably required of one doing such lawful act, or because the accident was the result of actual negligence or folly, and might, with reasonable care adapted to the exigency have been avoided. Thus, to illustrate, if A. burn his own house, and thereby the house of B., he is liable to B. for the injury; but if the house of A. is burned by lightning, and thereby the house of B. is burned, A. is not liable. The accident belongs to the first class, and was strictly inevitable and absolutely unavoidable. And if A. should kindle a fire in a long unused flue in his own house, which has become cracked without his knowledge, and the fire

should communicate through the crack and burn his house, and thereby the house of B., the accident would be unavoidable, under the circumstances, and belong to the second class. But if A. when he kindled the fire had reason to suspect that the flue was cracked, and did not examine it, and so was guilty of negligence, or knew that it was cracked and might endanger his house and that of B., and was so guilty of folly, he would be liable, although the act of kindling the fire was a lawful one, and he did not expect or intend that the fire should communicate." The learned writer goes on to say further: "The foundation of that liability in every case of accident, where it is the result of human agency, uninfluenced by the operations of nature, and the act is lawful, is really negligence. This is true of collisions between vessels on the water, or horses and vehicles and persons on land. . . . So, when a man in firing at a mark unintentionally wounds another, the injury is direct, and the form of action is trespass; but the ground of liability is negligence in doing an unnecessary and avoidable, though lawful, act without that extraordinary degree of care which the law demands in such circumstances, and which would have prevented the accident."

In Brown v. Kendall, 6 Cush., 292, which was an action of assault and battery, the defendant accidentally hit the plaintiff, a bystander, while raising a stick to strike and part two dogs which were fighting. Chief Justice Shaw, in his opinion in that case, held that the defendant was not liable, unless the act was done in the want of the exercise of due care adapted to the exigencies of the case, and therefore such want of due care became part of the plaintiff's case, and the burden of proof was on the plaintiff to establish it. In Paxton v. Boyer, 67 Ill., 132, 16 Am. Rep., 615, the action was for an assault and battery. It appeared that de-

Crabtree v. Dawson.

fendant and plaintiff's brother were in a conflict. When defendant struck plaintiff with a knife, supposing him to be the brother, plaintiff had in fact given no provocation. The jury found for the plaintiff, and assessed his damages. The court instructed for that plaintiff that it was no defense, so far as actual damages were concerned, that the defendant had been violently assaulted by a person other than plaintiff, or was then being assaulted by such person, or that he may have honestly believed he was striking the plaintiff's brother when he struck plaintiff, or that he may have honestly believed it was necessary for his self-defense to assault the plaintiff, if the jury found from the evidence that the plaintiff was not a party to such assault upon the defendant; that such evidence of mistake of fact or good intentions on the part of the defendant can only be considered by the jury as a defense against the infliction by the jury of vindictive damages, and not as a defense against such actual damages as the evidence showed plaintiff had suffered from such assault, or as naturally resulted from such assault." The instructions were disapproved of in the opinion of the supreme court, the court saying: "If a person, doing a lawful act in a lawful manner, with all due care and circumspection, happens to kill another, without any intention of doing so, he is not liable criminally. How, then, can it be said he shall be responsible in a civil case, when, in doing a lawful act with due care, if an injury happens, he shall be deemed in fault, and mulcted in damages? It is said by appellee the rule is different in civil cases; that the motive, intent or design of the wrongdoer toward the plaintiff is not the criterion as to the form of remedy, for, when the act occasioning the injury is unlawful, the intent of the wrongdoer is immaterial, but appellant here is no wrongdoer, as the

jury have said by their special verdict." The judgment in the case was reversed.

In 1 Joyce on Damages, p. 427, section 367, the author says: "Though an assault may be unintentional, yet, if it is recklessly committed, the party guilty will be liable in damages therefor, and the injured party may recover such damages as are the natural and direct result of the act of violence, including mental and physical pain and suffering. But one who in the exercise of his right of self-defense inflicts an unintentional injury upon a third party is not responsible in damages therefor, as where a person was assaulted by another, and he struck a third person, mistaking him for the assailant." Roberson's Criminal Law & Procedure, in section 542, p. 752, lays down the rule as follows: "This right of self-defense exists although the danger is not real, but apparent only. A person will not be held responsible civilly or criminally if he acts in self-defense from a real and honest conviction induced by reasonable evidence, although he may have been mistaken as to the extent of the actual danger," citing a number of Kentucky cases in support of the text.

When we apply the principles of law announced in these decisions to the case at hand, it follows that if the defendant, at the time he struck the plaintiff, believed, and had reasonable grounds to believe, that he was Ollie Noble, and that he further believed that it was necessary, in the exercise of a reasonable judgment, to strike Noble, in order to defend himself from a threatened attack about to be made upon him by Noble, and that he used no more force than was necessary, or appeared to him to be necessary, for this purpose, then he is excused on the ground of self-defense and apparent necessity. But it was the duty of the defendant to have exercised the highest degree of care practicable under the circumstances to have ascertained whether the person whom

he was about to strike was in fact the one whom he believed him to be, and from whom he apprehended danger to himself. And if he recklessly and wantonly struck plaintiff, he was entitled, in addition to compensatory damages, to exemplary damages as well.

Whilst the instructions given in the case by the trial court are based upon the proper theory, they are in several important respects technically erroneous. For instance, in the third instruction only "ordinary care and diligence" is required of the defendant in ascertaining whether the person he was about to strike was in fact the person from whom he anticipated injury. This is error. He should have been required to exercise the highest or utmost care practicable under the circumstances by which he was surrounded.

In the fourth and fifth instructions the words "due care and diligence" are used. While the word "due" is defined to be "that which is owed," or "that which one has a right to demand or claim," we think it hardly comes up to the requirements of this case.

Instruction No. 5 is also objectionable in that it specifically calls the attention of the jury in detail to the facts testified to by the defendant, and relied on to excuse his conduct. This error has been frequently pointed out and condemned by this court.

The sixth instruction is based upon the plea of contributory negligence, and is, in our opinion, out of place in this case. There is not a particle of evidence to show contributory negligence on the part of the plaintiff. He was at the place and doing exactly what he had the right to do. The instruction should therefore have been omitted altogether.

For reasons indicated, the judgment is reversed, and cause remanded for a new trial not inconsistent with this opinion.

Petition for rehearing by appellee overruled.