## Harco Corporation v. Martin, Commissioner of Revenue.

(Decided Oct. 29, 1937.)

574

CLIFFORD E. SMITH, CLYDE E. REED, SAMUEL M. ROSEN-STEIN and J. J. LEARY for appellant.

HUBERT MEREDITH, Attorney General, and W. OWEN KEL-LER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The parts of section 4224 of our present Statutes material to this controversy are: "Before engaging in any occupation or selling any articles named in this subdivision of article 12 of this act, the person desiring to do so shall procure license and pay the tax thereon as follows: * * * To selling by retail, petroleum, lubricating or other oil, for each wagon used in transporting or retailing such oils, fifteen dollars for each county in which each wagon is so used."

It was enacted in its present form in subdivision 4 of article 12 of chapter 22, page 88 of the Session Acts of 1906. The original act dealing with the subject matter, but more limited in its scope, was enacted in 1902, being chapter 128, article 10, secs. 25 and 32, found on pages 353 and 355 of the Session Acts of that year. Since the last enactment of that statute, others levying a tax on gas alone and a license tax, in the nature of a police regulation, upon motor vehicles operated upon the public highways of the state, became laws.

Appellant and plaintiff below, the Harco Corporation, is engaged in the business of wholesaling and retailing gas and motor oils used in the propelling of motor vehicles, which it transacts, not at a stationary place for the operation of its business, but by the use of a motor truck traveling upon and over the public highways upon which it transports the products in which it deals, with a tank upon its truck, to its various customers, and which business, conducted in that manner, it transacts in the counties of Bracken, Harrison, Robertson, and Scott in this commonwealth. Plaintiff, for itself and others similarly situated, filed this declaratory judgment action in the Franklin circuit court against defendant and appellee, James W. Martin, commissioner of revenue of the commonwealth, and in its petition it attacks the right of the commonwealth, through its commissioner of revenue, to collect the license fees mentioned in the excerpt supra from section 4224 of our Statutes—principally upon these grounds: (1) That the statute exacts the license fee therein imposed on ''each wagon used in transporting or retailing such oils,'' etc., and that the term ''wagon'' as therein employed does not, and was not intended by the Legislature to embrace a motor propelled vehicle, but only a vehicle propelled by muscular power of animals universally employed for that purpose before the advent of motor propelled vehicles, and still employed for that purpose to a limited extent. But, if mistaken in that contention, and it should be held that plaintiff's motor propelled vehicle is embraced by the terms of the statute, then (2) that plaintiff is not liable for the payment of the prescribed fees, for these reasons: (a) Because the statute was repealed by implication through the enactment of our two first gasoline tax statutes; or (b) that it was repealed by our statutes imposing a license on the registration of motor vehicles including trucks; (3) that the burden imposed by the attacked provisions of section 4224, supra, is discriminatory, in that no such tax is exacted from dealers in the same commodities who conduct their business from a stationary store at a permanent location; and (4) that the enforcement of the statute will impose upon those engaged in the burdened business double taxation. The learned trial judge sustained defendant's demurrer filed to the petition, and,

plaintiff declining to plead further, it was dismissed, to reverse which it prosecutes this appeal.

Before attempting a discussion or a determination of the grounds and reasons contended for it might be stated that, if neither of the reasons urged in support of ground (2) are sustained by us, then a consideration of ground (3) and ground (4) will become unnecessary, for if such reasons are held by us to be inadequate and unfounded there will exist no unlawful discrimination as a support for either the third or fourth ground of attack. Nevertheless, before closing the opinion we will briefly express our views upon the effects of the alleged "double taxation" forming the only support of ground (4). Our determination of the reasons in support of ground (2) will also sufficiently deal with the reasons for ground (3), i. e., unlawful discrimination, and will also destroy the reliance on "double taxation" as the exclusive reason for ground (4). Having said this much we will now proceed to a consideration of the arguments advanced for freeing plaintiff and others for whom he sues from the obligation of paying the license fees prescribed in the attacked statute.

1. Learned counsel for plaintiff devote 25 pages of their printed brief to a discussion of ground (1) supra. In it they make a most plausible and earnest argument to the effect that an animal drawn wagon is the only character of vehicle upon which the statute levies the imposed license fee, and, therefore, the statute cannot be interpreted so as to embrace a motor propelled vehicle which counsel contend is not a wagon as contemplated by the statute. They cite a number of cases from other jurisdictions drawing a distinction between a muscular propelled vehicle (concededly a wagon), and its successor, a motor propelled vehicle, to which latter class plaintiff's truck, which it operates in the manner described in the attacked statute, belongs; and the only cited domestic case is that of Life & Casualty Company of Tennessee v. Metcalf, 240 Ky. 628, 42 S. W. (2d) 909. But a reading of that opinion will serve to convince the reader of its inapplicability, since the question therein decided, and our reasoning in support thereof, points in the opposite direction. The cited foreign cases are, Crown Laundry & Cleaning Company v. Cameron, 39 Cal. App. 617, 179 P. 525; Prater v. Riechman, 135

Tenn. 485, 187 S. W. 305; Snyder v. City of North Law-rence, 8 Kan. 82; Bandos v. City of Philadelphia, 304 Pa. 191, 155 A. 279; In re Wilder (D. C.) 221 F. 476; Commonwealth v. Goldman, 205 Mass. 400, 91 N. E. 392; United States v. One Automobile (D. C.) 237 F. 891; Shawnee National Bank v. U. S. (C. C. A.) 249 F. 583. There may be still others relied on from foreign juris-dictions, but an examination of them will reveal the fact that the courts before which they were pending were interpreting "exemption" statutes wherein they ex-empted from the reach of creditors specifically de-scribed articles embracing "a wagon," and in which in some instances the specifically exempted article was fur-ther particularly set apart by indicative words of its propelling power, as a "one-horse" wagon, or a "two-horse" wagon.

Another class of statutes construed by the courts in some of the cases relied on exempted like specifically designated articles to a surviving widow upon the death of her husband, under statutes of Descent and Distribu-tion (Ky. Stats., sec. 1393 et seq.). It was contended in those cases, and the courts before which they were pending so held, that the statute under consideration at-tempted to and did, by the language the Legislature en-acting them employed, designate a specifically described article or object upon which only the terms of the stat-ute could operate; and if the attacked statute in this case should be interpreted as placing its enacted burden solely and specifically upon a particularly described ve-hicle instead of on the business being conducted by that vehicle, then the cases relied on by learned counsel would be in point.

Counsel seek to apply the principle of "specific des-ignation," so as to make the article or thing taxed under the section of the statute here assailed (section 4224, supra) as the "wagon," and in support thereof they cite the cases of Standard Oil Co. v. Common-wealth, 119 Ky. 1, 82 S. W. 970, 83 S. W. 557, 26 Ky. Law Rep. 927, 1187; Com. v. Standard Oil Co., 120 Ky. 724, 27 Ky. Law Rep. 1073, 87 S. W. 1090, 1091 (second case same style on that page). Their brief contains this excerpt from the last-cited opinion: "The statute is purely a revenue law, and the license is for the wagon used in the business of retailing oil for one year. * * *

The subject, then, of taxation, is the operation of the wagon for the license year. * * * The offense is the operation of the wagon, as a means of carrying on the retailing of oil, without a license. The tax is on the wagon, and the offense of operating the wagon without a license is a continuous one. The sale or offer to sell from the wagon is made by the statute conclusive evidence of the operation of the business, but it is not necessary to allege a sale to any particular person in order to state an offense under the statute."

They emphasize the first part of the fourth sentence in that excerpt beginning, "The tax is on the wagon," and from which it is argued that the Legislature, in enacting section 4224, supra, or that portion of it attacked in this action, intended to levy a tax on the specific vehicle designated therein as a "wagon," regardless of the operation in which it was employed or the business being conducted by the use of it. But a continuation of the sentence of which that emphasized phrase is a part says: "The tax is on the wagon, and the offense of operating the wagon without a license is a continuous one." Prior to the employment of that language the court had referred to the prior case of the same style reported in 119 Ky. 1, 82 S. W. 970, 972, 83 S. W. 557, and other reports above recited, wherein we had said that, "The unit of taxation is the wagon used in the business of transporting oil for sale." After having incorporated the excerpt from the prior case in 119 Ky. 1, 82 S. W. 970, 83 S. W. 557, the court in the case reported in 120 Ky. 724, 87 S. W. 1090, 1091, and other publications above recited, then said: "The subject, then, of taxation, is the operation of the wagon for the license year." Those two cases were both prosecutions for operating the wagon in the designated business, for which the license tax was levied, without having obtained such license. In each of them, and also in other similar prosecutions referred to in them, we most emphatically said that the thing taxed was—not the article forming the unit of taxation (the wagon)—but that the tax was on that article *when used in the manner described in the statute.* It is, therefore, plain that the cases referred to, and particularly the one reported in 119 Ky. 1, 82 S. W. 970, 83 S. W. 557, 26 Ky. Law Rep. 927, 1187, and the one reported in 120 Ky. 724, 87 S. W.

1090, 27 Ky. Law Rep. 1073, do not support the contention of counsel, but hold directly to the contrary in accord with the universal rule for the interpretation of statutes, i. e., to consider all parts of them in the light of the purpose attempted to be accomplished and to construe terms, if possible, so as to carry out that intent and accomplish that purpose.

Multiplied cases and instances might be cited wherein those rules are emphatically approved and they are of universal application. We approved them in our opinion in the 119 Kentucky case, supra, and also many times before and since then. They were applied in the case of Keen v. Ross, 186 Ky. 256, 216 S. W. 605, wherein the interpretation of a contract was involved. It pertained to the "livery" business and was made at a time when motor vehicles had largely supplanted the horse drawn or muscular drawn wagon, or similar vehicle. A partner in the livery business sold his interest to his other partner. In the contract the selling partner agreed to refrain from entering into the "livery" business within a specified radius within a named time. He soon began to operate a taxicab with a motor drawn vehicle. Litigation arose because of that alleged violation of his contract. His defense was, that the business that he was conducting with his motor drawn vehicle was not "livery" business in which he had agreed not to embark. In support of that argument his counsel vigorously contended that "livery" business, in the sense in which it was employed in the contract, and as generally understood, was confined to horse drawn vehicles, and that their client, because he did not employ animal muscular power to propel his taxicab was, therefore, not engaged in the "livery" business. But we held otherwise and based our opinion upon the ground that the activity in which the selling partner (defendant therein) later embarked, and which he agreed not to resume, was the rendering of like service by any sort of propelled vehicle, notwithstanding it was formerly performed exclusively by muscular drawn vehicles. We reached that conclusion through the helpful aid furnished by the rules of interpretation above referred to, and in the course of the opinion, we said: "We are not, therefore, to conclude that service rendered by livery stable keepers is none the less livery service because it

is rendered with motor-drawn, instead of horse-drawn vehicles. We know, as a matter of current history, that the transportation of members of the public for hire is now largely being performed with the use of the automobile, which has in great measure supplanted the old horse-drawn carriage and its companion, the buggy. It is therefore patent that the contracting parties in the instant case, at the time of the execution of the contract, intended to deprive the defendant of the right of performing any service for the public which was an essential part of that performed by one engaged in the livery business, and the fact that such service was performed in a different manner from the way it was formerly done will not excuse the defendant in violating the very purpose and object intended by the contract.'' The analogy is too plain and convincing to require more extended discussion.

We deem it unnecessary to lengthen the discussion of this ground, since we are convinced that counsel is in error in their contention that the Legislature intended that the attacked statute should operate only on muscular drawn vehicles, and not to apply to those propelled by motor power. We are further fortified in that conclusion by the definitions given of the term ''wagon'' by Mr. Webster, Mr. Bouvier, Mr. Anderson, and other lexicographers. The definition given by Mr .Webster is: ''A kind of four-wheeled vehicle, esp. one used for carrying freight or merchandise * * * a four-wheeled vehicle for transporting goods on a railway;—corresponding in general to the American freight car, but usually of much smaller capacity. A chariot. A car used in a mine for carrying ore,'' etc. Nowhere in that definition does he mention the character of propelling power as an essential part of it. We therefore conclude that ground (1) cannot be sustained.

2. We next take up for disposition reasons (a) and (b) urged supra in support of ground (2) and since they are pointed in the same direction we have concluded to consider them together, the principle sought to be applied being involved in each of them. That principle is, that the attacked portion of section 4224 was repealed by chapter 93, page 464, of our Session Acts of 1920, as amended and re-enacted by chapter 90, page 244, of our Session Acts of 1922, which two acts

were the first ones in this commonwealth imposing a tax on gasoline. The first one imposed the tax directly on that one product alone; whilst the second one placed it on other petroleum products as well. The first one explicitly provided that the 1 cent tax, levied in both statutes, was upon the specific commodity of gasoline, whilst the second one, purporting only to be an amendment and re-enactment of the first one, required retail dealers in gasoline to pay a tax measured by the quantity they sold, the gallon being the unit. The chief and, perhaps, exclusive insistence made by counsel in support of reason (a) supra is based upon the 1922 enactment wherein they argue that the Legislature imposed the tax on the privilege of retailing gasoline, and did not impose it on the sold commodity itself. From that premise counsel then argue that the second act having been so framed, was exclusively an imposition of a license fee for the privilege of selling gasoline and that it, on becoming effective, ipso facto, repealed the attacked portion herein of section 4224, supra. They therefore argue that no later re-enactment of our gasoline tax, howsoever worded or framed, could reinstate the attacked statute that had been so impliedly repealed by the 1922 act. By that argument they would avoid the interpretations we put upon our later enacted gasoline statutes in the case of Shanks, Auditor v. Kentucky Independent Oil Company, 225 Ky. 303, 8 S. W. (2d) 383, 385, in which we interpreted our then existing (and which is equally applicable to our present one) statute imposing our gasoline tax for road purposes.

In that opinion it was specifically stated, inter alia, that "A careful reading of the act convinces us that the tax imposed was not intended as a license tax or a tax for the privilege of engaging in the business of selling gasoline in this state." Reasons are then advanced for that interpretation and which culminated in this later statement: "The tax under consideration is in its essence a tax upon consumption or upon the privilege of using, and is not a tax for the privilege of selling," and that the tax imposed was essentially one on the article itself. Counsel also invoke the same principle in support of reason (b) supra, of this ground, by contending that our various motor vehicle license laws impliedly repealed the same attacked provision of section

4224. Such arguments call for a consideration of the principle of "Implied Repeals" of statutes. In dealing with it we will, for brevity's sake, insert when deemed necessary only syllabi of the cases referred to, but which in each case is completely supported by the opinion itself.

At the beginning it confidently may be stated that repeals by implication are not favored. Two comparatively late cases announcing and approving that universally applied rule are Horton v. Horton, 185 Ky. 131, 214 S. W. 883, and Lewis v. Mosely, 215 Ky. 573, 286 S. W. 793, one syllabi to each saying: "Repeals by implication are not favored, and will not be upheld, unless such intent clearly appears." A long list of cases is catalogued under the heading of Implied Repeal in General, in Key Number System 158 (subject Statutes) volume 17 of West's Kentucky Digest. Other syllabi are listed under that key-number stating the rule even more peremptorily than was done in either of the two cases referred to. The following key-number (159) under the heading Implied Repeal by Inconsistent or Repugnant Act, contains as many or more instances wherein we held that "Repeals by implications are not favored, and the repugnancy between the later and prior act must be wholly irreconcilable in order to work a repeal of the prior act." Also, "Repeals by implication are not favored; it being the duty of the court to so construe the acts, if possible, that both shall be operative." A number of domestic opinions are cited in support of each of those inserted syllabi and the key-number of the Digest referred to contains many others to the same effect, as is also done in the Cumulative Supplemental Digest in the back of the volume referred to, under the same key-number, a late one being that of Wood v. Commonwealth, 229 Ky. 452, 17 S. W. (2d) 440. Under Key Number System 161 (1) of the same topic of the Digest are chronicled a long list of domestic cases dealing with the question of Implied Repeal by Act Relating to Same Subject, one of which is Thomas v. Hurst Home Insurance Company, 186 Ky. 178, 179, 216 S. W. 368, one syllabus saying: "Repeals by implication are not favored and will not be declared except it be impossible to permit both statutes to stand, and if both acts can be reasonably construed together

so as to harmonize them, both will be sustained, and if that cannot be done without violence to some part of the language employed in one or both, they should be so construed that as much as possible of each will remain." Another listed case under that heading and key-number is Exall v. Holland, 166 Ky. 315, 179 S. W. 241, the syllabus to which says: "To result in a repeal of an earlier act by implication, the later [one] must be upon the same subject and be plainly repugnant to the former; or the later act must cover the whole subject of the former and plainly show that it was intended as a substitute therefor." As stated, multiplied cases might be cited in substantiation of such declared principles; but, since they are everywhere recognized and upheld, it. is manifestly unnecessary to do so.

The first question, therefore, is, whether our first, or any later enacted gasoline tax statute, deals with the same subject that is dealt with by the attacked portion of section 4224 of our Statutes? It is argued by counsel for plaintiff that our earlier gasoline tax statutes (enacted however long after the attacked portion of section 4224, supra, became a law) dealt with the same subject that the attacked statute does, which, as they argue, was a tax on the privilege of selling gasoline. To begin with we are not at all convinced that the Legislature by the changed wording of chapter 90 of the Acts of 1922 from the language found in the amended and repealed prior act of chapter 93 of the Acts of 1920, ever intended to change the nature of the tax from one imposed on the article sold, and laying it. on the privilege of selling that article. But if it should be admitted that such an intention and purpose was harbored by the Legislature in enacting the 1922 act,. the question recurs whether the attacked statute, and. chapter 90 of the 1922 acts, imposed a tax on the same subject? The act of 1922, even if we should interpret it as do counsel, as imposing the levied tax on the privilege of selling gasoline instead of a tax on the article sold as did the original gasoline tax statute, was clearly confined only to all sellers of gasoline of the same class of dealers to which the statute was made applicable. It did not affect the right of the state to collect a tax previously levied by a prior statute upon dealers in gasoline whose business was conducted in such a manner as.

to sustain a classification embracing them only; nor did that act, and the tax therein imposed, prevent the Legislature from placing a higher or an additional tax upon dealers of the same commodity who conducted their business in a manner so as to justify a legal classification. The attacked charge or fee, as we have seen, was laid upon the privilege of selling gasoline, not at a local and stationary fixed place of business to which customers would come and go, but upon the privilege of using the public highways of the commonwealth for transporting the commodity sold to the purchaser by the seller and to thereby convert the privilege of the use of the highways into a necessary facility for the transaction of a private commercial business. The privilege so burdened, therefore, is the permit for the dealer in the particular commodity to prosecute his rolling business over the state highways.

In other words, the classification so created by the continued existence of the attacked statute was plainly one based upon substantial grounds. The Legislature knew that the product being dealt with possessed inherent danger and that the safety of the traveling public required, or at least permitted, the right of the state to exact greater demands from a dealer in it, who conducted his business exclusively upon its public highways, than should be done from one who did not so occupy or appropriate them in the conduct of his business. If, therefore, everything else argued by counsel should be conceded for the purposes of the case only, then the argument falls to the ground when it is found that the essential element of the two statutes relating to the same subject is absent. We are fully authorized to uphold such classification based upon such differentiation by many of the opinions found in the key-numbers of the Digest supra; but if none such existed, then the argued reasons (a) and (b) should be denied upon the general principle above referred to, that it is the duty of the court to uphold both statutes if possible, and that such a holding will be made, unless it may be gathered from the language of the two statutes that it was not the intention of the Legislature that it should be done. The cases of Ashland Transfer Company v. State Tax Commission, 247 Ky. 144, 56 S. W. (2d) 691, 87 A. L. R., 534, and Falls City Brewing Company v. Talbott, 265

Ky. 541, 97 S. W. (2d) 57, 59, sustain some, if not all of our announced conclusions. A more extensive consideration of the question would elucidate and fortify the principles under consideration so as to support our determinations as above stated were it necessary, but, we repeat, for brevity's sake, we will not indulge in it. We, therefore, conclude that reason (a) urged in support of ground (2) cannot be sustained.

What we have said with reference to reason (a) substantially disposes of reason (b) also; but in addition thereto it should be said that our various motor registration license acts (Ky. Stats., sec. 2739g-1 et seq.), with their attached fees, are strictly police regulations and not revenue taxing acts. Many cases could be cited in substantiation of that statement, but we will refer only to City of Mayfield v. Carter Hardware Company, 191 Ky. 364, 230 S. W. 298, and Id., 192 Ky. 381, 233 S. W. 789. The registration charges, therefore, that are imposed and collected under the motor registration acts, are not for the purpose of raising revenue, but only for the purpose of creating a fund, presumably adequate to enforce police regulatory requirements, and to protect against damage produced, and their imposition may not be considered in dealing with the question of "double taxation," by a purely revenue statute. But howsoever that may be, the Falls City Brewing Company Case, supra, clearly points out that "The imposition of a property tax and also a license or occupation tax is not within the prohibition [against double taxation], nor is, ordinarily, the imposition of two or more licenses or occupation taxes." That excerpt is taken from the text in volume 1, section 228 of Cooley's "The Law of Taxation." Further along in that opinion we inserted the text in 61 C. J. 144, saying: "As already noted, there is no obnoxious double taxation because of the imposition of both a property and a license or occupation tax."

The classifying of plaintiff and others similarly situated and placing a greater burden on them as is done by the attacked statute, because of the manner in which they conduct their business, is clearly sustained by the authorities referred to. They enjoy and employ an additional and more distinct privilege than does a localized dealer in the same commodity, and which is further il-

lustrated by the fact that nearly every state in the union, if not all of them, for many years past have enacted and enforced what is generally known as "peddler's" license for which a fee is charged. Whether such statutes are enacted as police measures, or as revenue raising statutes, they have been upheld continuously as being based upon an admissible classification whereby the taxed peddler is required to pay the enacted fees, although he is engaged in selling the same class of merchandise as is done by localized dealers who are not required to pay the peddler's license fee. A late case sustaining the classification here attacked, as we construe it, is that of Williams v. City of Bowling Green, 254 Ky. 11, 70 S. W. (2d) 967. We, therefore, conclude that neither reason (a) nor (b) supports ground (2) relied on to obtain a reversal of the judgment and that we are without authority to attach to them any such effect.

Our argument in disposing of grounds (1) and (2) also effectually disposes of grounds (3) and (4). But it may be added that, for the reasons stated therein, our opinion in the Falls City Brewing Company Case at least casts a doubt upon and raises a question as to the soundness of our opinion in the case of Green v. Frankfort Distillery Company, 209 Ky. 427, 273 S. W. 28, being among the chief ones relied on by appellant's counsel, since there appears to be no constitutional inhibition against unqualified double taxation. There exists a judicially declared public policy to frown upon it and to refrain from upholding it, even where not prohibited by constitutional provisions, unless it unequivocally appears that it was the intention and the purpose of the Legislature to provide for it. But there being in this jurisdiction no constitutional inhibition against it, it would appear that courts would be without authority to impose its public policy declarations in such circumstances, as a substitute for a legislatively declared policy, the law-making body in the end being the supreme authority in defining what is or what is not public policy. However, in view of the foregoing reasons, we will not base this opinion upon any such consideration, since we have endeavored to (and we think successfully so) point out that there is no double taxation in this case.

The length that this opinion has already reached

admonishes us that it should be drawn to a close without lengthening it by a more extensive discussion of the question argued and discussed, but which, if indulged in, would inevitably fortify our previously stated determinations. They are: (1) That the fees exacted by the attacked statute are not laid upon the wagon or vehicle through which the license business is conducted, but upon the operation of the vehicle in playing its part in the conducting of that business; (2) that none of our gasoline tax statutes impliedly or otherwise repealed the attacked provision of section 4224 of our Statutes; (3) neither does our motor registration statute for which a fee is charged have any such repealing effect; (4) that in imposing the registration license fee the Legislature provided for a police regulation and not for the levy of a revenue tax, and it was not intended thereby to supersede or annul the license fee imposed on the business by the attacked provision in section 4224 of our Statutes, since the financial exactions are not imposed upon the same thing; (5) that the imposition of the fee for operating the business conducted in the manner set out in the attacked statute, and that imposed under the motor registration act, are by no means in conflict, nor is the fee imposed by that statute discriminatory against plaintiff and others similarly situated because they are also required to pay for registering their trucks under the registration acts; (6) that none of the acts referred to impose double taxation, and (7) that none of them, nor all of them operating together, invade any of plaintiff's constitutional rights as guaranteed to him, either by the Federal or our State Constitution.

For the reasons stated, the judgment is affirmed; the whole court sitting.