**CITY OF LOUISVILLE and Donald C. Williams, Appellant,**

v.

**James J. YEAGER, Appellee.**

Court of Appeals of Kentucky.

Jan. 19, 1973.

Joseph H. Eckert, Asst. Director of Law, Louisville, Frank E. Haddad, Jr., Louisville, for appellant.

Frederick C. Dolt, John L. Knopf, Louisville, for appellee.

REED, Justice.

The plaintiff, James J. Yeager, a county police detective, recovered judgment against the defendant, Donald C. Williams, a city police officer, and his employer, the City of Louisville, in the amount of $65,000. This judgment was entered in accordance with a jury verdict.

Yeager's action was for personal injuries sustained when he was shot and wounded by the defendant Williams who was admittedly acting within the course and scope of his employment as a police officer by the defendant, City of Louisville. The defendants' appeal from the judgment entered is based upon two claims of prejudicial error that they assert occurred at the trial: First, inadmissible and prejudicial evidence

was admitted over proper and timely objection; second, the trial judge failed to properly instruct the jury despite timely and specific objections. We have concluded that the admission of the questioned evidence was within the discretion of the trial judge and we cannot say that his discretion was abused. We have also concluded that defendant's proffered instructions, which the trial judge refused, would not have been proper had they been given, and since the instruction incorporating the defense that was given by the trial judge was prepared and tendered by the defendants, for purposes of appellate review it must be considered sufficient to submit to the jury the defense incorporated in it. Consequently, we affirm the judgment.

The plaintiff, Yeager, was on duty as a county police detective on the evening of April 20, 1968. He worked a shift starting at 4 p. m. and ending at midnight. Twenty minutes after his shift ended, he was severely wounded by a single shot fired by the defendant, Donald C. Williams, a Louisville city police officer who was then on duty.

The evidence established that the plaintiff started home at midnight, having secured a ride from a fellow county officer, Lynum. Lynum was driving his personal automobile, a two-door Volkswagen. Another officer, Stein, was in the rear seat and plaintiff rode in the front right seat. All three county officers were in civilian clothes and the automobile bore no police stickers, emblems or insignias. Plaintiff had with him on this occasion his sawed-off shotgun.

'Lynum drove to Seventh and Market Streets in Louisville, Kentucky, pulled to the curb at the northeast corner and then backed east along the north curb of Market Street and stopped. After the Volkswagen stopped, the plaintiff opened the right door to let officer Stein, the passenger in the back seat, out of the automobile. According to plaintiff's testimony, he was shot by officer Williams immediately upon opening the door preparatory to letting Stein out of the automobile. The plaintiff testified that until he was shot he was completely unaware of the presence of any police officer at the scene and did not see any police vehicle or lights. He stated, however, that, for a few seconds after the car stopped, he and Lynum continued to talk.

Plaintiff's sawed-off shotgun was probably standing on the floor of the car with its muzzle pointed toward the roof between Yeager's legs as he sat in the right front seat of the Volkswagen. The testimony was somewhat conflicting as to what position the weapon was in at the time of the actual shooting.

According to defendants' evidence, Williams and another city police officer were on duty when they saw the Volkswagen stopped at the curb with the three men inside, one of whom had a shotgun. The two city policemen drove their motorcycles to the side of the street on which the automobile was parked. They then stopped, dismounted, and defendant Williams pulled his service revolver. Williams testified that he shouted a command for the occupants to get out of the automobile and then gave a second command to throw out the weapon. The testimony of Williams was to the effect that, at this point, the door of the car opened and he believed the occupant, who later proved to be detective Yeager, was going to shoot him. Williams then fired the shot that caused Yeager's injuries. Shortly after this, Williams and his fellow officer became aware of the identities of the occupants of the car.

The defendants argue that prejudicial error was committed by the trial judge when he admitted into evidence color pictures taken of Yeager's wounds on the night of the incident. This photographic evidence consisted of three 5″ by 7″ color photographs. They were taken by county officer Pendleton and, according to the defendants, were introduced to arouse the passion and prejudice of the jury by exhib-

iting plaintiff's bloody condition. The defendants cite numerous cases in some of which photographic evidence was admitted and in others it was rejected.

■ The fact that a photograph is more effective than an oral description, and to that extent calculated to excite passion and prejudice, does not render it inadmissible evidence. 29 Am.Jur.2d, Evidence, Sec. 787, page 861. Courts have held with discernible consistency that, generally, the admission or rejection of photographic evidence is a matter which rests largely within the discretion of the trial judge. See 32 C.J.S. Evidence § 716, pages 1018–1019.

In Napier v. Commonwealth, Ky., 426 S.W.2d 121 (1968), in which Salisbury v. Commonwealth, Ky., 417 S.W.2d 244 (1967), was cited, this court pointed out that in these modern times jurors are less likely to react with passion to photographic evidence than was true in earlier times. Recognizing the daily impact of television showing scenes of war, horror and violence in living rooms throughout the nation nightly, we are persuaded that the sensibility of the average juror in the 1970s bears little or no relation to the sensibilities of jurors in bygone days.

■ There is no claim that the pictures were contrived closeups or that they did not fairly depict that which they purported to show. The only complaint is that they appeared to be very bloody. We are unable to declare that the trial judge abused his discretion when he admitted the photographs into evidence and allowed the jury to view them. See Commonwealth, Department of Highways v. Garland, Ky., 394 S.W.2d 450 (1965), and an article by Perlman which reviews the law in Kentucky with regard to demonstrative evidence in 33 K.B.J. 5 (1969).

The only other contention advanced by the defendants in support of their contention that the judgment should be reversed is that the trial judge erred in failing to give instructions which they offered and in

which issues of negligence, contributory negligence, sudden emergency, and definitions of ordinary care and negligence were set forth.

The pleadings filed by the plaintiff alleged "negligence," "gross negligence," "gross carelessness" and also contained an allegation that the conduct of the defendant consisted of "wilfully and wantonly shooting this plaintiff." The defendant Williams unequivocally testified that he intentionally fired at detective Yeager. In sum, the entire evidence in the case adduced by both the plaintiff and the defendants showed intentional conduct which was claimed to be justified under the circumstances.

■ In view of this evidence, to which no objection was directed, accompanied by the fact that the defendants themselves offered instructions on the issues of assault and battery and justification for assault and battery, we think the trial judge properly excluded the instructions concerning negligence, contributory negligence and sudden emergency from the case. CR 15.-02.

■ Defendants argue that our law is such that even though the case was tried on the basis of an action for assault and battery, the trial court erred when it failed to include the elements contained in the offered instructions. We think this argument is based upon a misconception. A study of the general trend in this area, including that in Kentucky, may be found in Prosser, Handbook of The Law of Torts, Chapter 2, (4th Edition, 1971). At page 30 the author says: "There is still some occasional confusion and some talk of a negligent 'assault and battery.'" Later, at pages 40 and 41, the author states: "To be held liable for assault, the defendant must have intended to interfere with the plaintiff's personal integrity—which is to say that he must have *intended* to bring about assault and battery or imprisonment. *There is, properly speaking, no such thing as a negligent assault.*" (Emphasis added.)

The law in Kentucky applicable to the question has pursued a somewhat serpentine course. Anderson v. Arnolds Ex'r, 79 Ky. 370 (1881), held that there could be an assault that that was negligent and reckless but not intentional. Twelve years later in Perkins v. Stein and Co., 94 Ky. 433, 22 S.W. 649 (1893), the court in its opinion directly indicated that there can be no assault and battery without intent. Neither of these cases has ever been specifically overruled.

Changing directions were again signaled, however, in Crabtree v. Dawson, 119 Ky. 148, 83 S.W. 557 (1904), where the court indicated that although in the particular case (an action for assault and battery) an instruction on contributory negligence was unwarranted; nevertheless, if there was evidence of contributory negligence, then such an instruction would be proper, thus the anomalous action that would have to be nominated "negligent assault and battery" was at least implicitly approved. Lamb v. Clark, 282 Ky. 167, 138 S.W.2d 350 (1940) adopted language from an Iowa case, Ruter v. Foy, 46 Iowa 132 and tacitly overruled the questionable statements made in the Crabtree case. In the Lamb case this court said:

"There can be no contributory negligence except where the defendant has been guilty of negligence to which the plaintiff's negligence could contribute. An assault and battery is not negligence. The former is intentional; the latter is unintentional.

"Also, it is stated in § 24, page 829, 6 C.J.S., Assault and Battery, that contributory negligence constitutes no defense in an action for assault and that it is no defense that plaintiff contributed to the injury."

Finally, in Sigler v. Ralph, Ky., 417 S.W.2d 239, 241 (1967), the court remarked concerning an assault and battery action: "So far as the proof is concerned, the cause of action (assault and battery) depends upon an intentional laying of hands and could not succeed on negligence; . . . ." The restatement of the Law of Torts requires intent to constitute an assault. See Restatement 2d, Law of Torts, Sec. 21, page 37. We, therefore conclude that, at least insofar as compensatory damages are concerned, intentional conduct is involved and the elements of negligence, contributory negligence and sudden emergency are not relevant. See 6 Am.Jur.2d, Assault and Battery, Sec. 153, pp. 129, 130.

■ The justification of the defendants for the intentional conduct was based upon the proposition that the defendant Williams as a police officer was entitled to use reasonable force in effecting an arrest and to act in his own self-defense in a situation where the conduct of the plaintiff gave the defendant Williams reasonable grounds to believe that the plaintiff was about to kill him or do him some great bodily harm; that the defendant policeman believed and had reasonable grounds to believe from the conduct of the plaintiff that in order to avoid such danger, either real, or to the defendant policeman apparent, it was necessary to act as he admittedly did on the occasion. This was incorporated in an instruction prepared and tendered by the defendants. We, therefore, consider its technical wording as sufficient to present the defense incorporated in it. In any event, it adequately informed the jury of the defensive issues to be considered in the determination of whether the intentional conduct of the defendant policeman was justified under the circumstances. We, therefore, cannot characterize the trial judge's instructions to the jury as prejudicially erroneous.

The judgment is affirmed.

All concur.